UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| CHRISTIE CLINIC, PC, individually and on behalf of others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MULTIPLAN, INC., )<br>a New York corporation, )<br>UNICARE LIFE & HEALTH )<br>INSURANCE COMPANY, )<br>a Texas corporation, and )<br>UNITED HEALTH CARE, )<br>a subsidiary of United Health Group, )<br>a Minnesota corporation, )<br>Defendants. ) | Case No. 08-2065 |

# REPORT AND RECOMMENDATION

In March 2008, Plaintiff Christie Clinic, P.C., filed a Complaint (#1) against Defendants MultiPlan, Inc. (hereinafter "MultiPlan"), UniCare Life and Health Insurance Company (hereinafter "UniCare"), and United Health Care, a subsidiary of United Health Group (hereinafter "United"). Federal jurisdiction is based on the Class Action Fairness Act (28 U.S.C. § 1565) and on diversity pursuant to 28 U.S.C. § 1332(d)(2)(A).

In May 2008, Defendant United filed a Rule 12(b)(6) Motion To Dismiss (#30). In June 2008, Plaintiff filed a Response to Defendant United's Motion To Dismiss (#45). After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendant United's Rule 12(b)(6) Motion To Dismiss **(#30)** be **GRANTED** in part and **DENIED** in part.

## I. Background
### A. General Background
#### 1. The Parties and Their Relationship

The parties in this case include Plaintiff, MultiPlan, United, and UniCare. Plaintiff is a health care provider, that is, a corporation engaged in providing health care services performed

by licensed physicians and nurse practitioners. (#1, ¶ 10.) MultiPlan is a Preferred Provider Organization Administrator, that is, a company that works as an intermediary between health care providers and health insurance companies to create a Preferred Provider Organization network. Defendants United and UniCare are health insurance companies, that is, companies that reimburse health care providers for services rendered to the companies' insureds. The complaint refers to the health insurance companies as "payors."

The parties in this suit are related to each other through a Preferred Provider Organization (hereinafter "PPO") arrangement. A PPO is designed to manage the provision of health care services through arrangements between health care providers (such as Christie), payors (such as United and UniCare), and a PPO Administrator (such as MultiPlan) who establishes this PPO arrangement. (#1, ¶ 14.) In PPO arrangements, health care providers agree to offer a discount rate to patients who are insured by payors in the network. In return, payors with access to the discount rate must provide incentives to patients that "steer" them to the health care providers. In this way, health care providers are compensated for the discount rate by an increase in volume of patients. (#1, ¶¶ 15-16.)

Plaintiff filed the complaint as a class action, on behalf of (1) all licensed medical providers (physicians and hospitals) who (a) were parties to a MultiPlan Participating Primary PPO Provider Agreement, and (b) unknowingly and without their consent had MultiPlan preferred provider discounts taken against payments for medical services rendered to out-of-network patients; and (2) patients who have been improperly billed as a result of Defendant's conduct. (#1, ¶ 44.) However, because class certification is still pending at this stage, the Court will only consider Defendant's motion to dismiss only as it relates to Plaintiff Christie Clinic.

## 2. Legal Structure of PPOs in General

A PPO arrangement is created through two contracts. First, health care providers contract with the PPO Administrator. Health care providers agree to provide a discount rate to patients insured by network payors, and the PPO administrator agrees that it will obligate network payors to provide incentives to their insureds that "steer" those insureds to the preferred

health care providers. Second, the PPO administrator contracts with payors. The PPO administrator offers payors access to its contracts with preferred health care providers and the payors agree to provide incentives to their insureds that "steer" those insureds to the health care providers. In this way, the payors become responsible for providing the incentives specified in the contract between health care providers and the PPO administrator. (#1, ¶¶ 1, 3, 14-16, 24, 27.) Along with its motion to dismiss, Defendant presented contracts between MultiPlan and Plaintiff and between MultiPlan and United and MultiPlan and UniCare. Plaintiff also attached copies of the contracts to its response.

### 3. Plaintiff's Allegations Regarding the PPO Operation

In the complaint, Plaintiff refers to its patients that qualify for the discount rate (because those patients are insured by payors in the PPO) as "members" of the PPO, indicating that these individuals are "in-network" patients. Plaintiff's patients who are not insured by health insurance companies that qualify for the discount rate are "out-of-network" patients. Health insurance companies pay a larger portion of the cost of care when their insureds receive "in-network" health care services (hereinafter an "in-network reimbursement rate"); they pay a smaller portion of the cost of care for their insureds when the insureds receive "out-of-network" health care services (hereinafter an "out-of-network reimbursement rate").

As the PPO Administrator, MultiPlan is responsible for determining which of Plaintiff's patients are "in-network" and which are "out-of-network." Once MultiPlan makes this determination, it applies any applicable discount rate, it determines whether that patient's insurance company pays an "in-network reimbursement rate" or an "out-of-network" reimbursement rate, and it sends the bill to that patient's insurance company. The insurance company reimburses Plaintiff in the amount determined by MultiPlan. Plaintiff may "balance bill" the patient for the difference between the cost of care, minus any applicable discount rate, and the amount Plaintiff received from patient's insurance company.

### 4. History of the Parties' Agreements

Plaintiff alleges that it first entered into a PPO arrangement with Health Network, MultiPlan's predecessor, in 1990. (#1, ¶ 36.) Emergis acquired Health Network in 2000 and MultiPlan acquired Emergis in 2004. (#1, ¶¶ 37, 38.) In December 2004, Plaintiff and MultiPlan entered into an Amendment of Participating Primary PPO Provider Agreement (hereinafter "the PPO Amendment"), which is now the subject of this dispute. (#1, ¶¶ 41, 66.) Plaintiff alleges that the terms of the PPO Amendment obligated MultiPlan to enter into payor agreements only with payors who (1) sponsored preferred provider or exclusive provider health care coverage plans to patients, and (2) provided incentives to steer patients to preferred providers. (#1, ¶ 41.) MultiPlan subsequently contracted with payors UniCare and United. Plaintiff alleges that UniCare and United did not perform these obligations. (#1, ¶ 41.)

### B. Plaintiff's Claims

Plaintiff alleges that Defendants have engaged in a " Silent PPO."  Plaintiff defines a Silent PPO as follows:

> [A Silent PPO is an] illegitimate appropriation of discounted reimbursement amounts by payors who do not offer a preferred provider or exclusive provider policy to patients and/or who do not offer any financial incentive mechanism (e.g. reduced co-payments, reduce [sic] deductibles, or reduced premiums) to steer or channel patients to preferred providers for receipt of medical services.

(#1, ¶ 18.)

Plaintiff alleges that, because Defendants have engaged in a Silent PPO, Plaintiff has received nothing in exchange for providing a discount, and Defendants have saved millions in reimbursements to providers because their insureds received the wrong discount rate. (#1, ¶ 19.) Plaintiff alleges that UniCare and United have improperly accessed and appropriated the MultiPlan PPO discount rate by deceptively contracting with MultiPlan and using MultiPlan's provider database. (#1, ¶ 20.) United and UniCare's deceptive contracts with MultiPlan were not disclosed to Plaintiff. (#1, ¶ 6.) Plaintiff alleges that payors fraudulently presented their

insureds who received Plaintiff's health care services as in-network members who qualified for the in-network discount rate by implying those insureds were "steered" to Plaintiff with incentives. (#1, ¶ 28.)

Furthermore, as part of the Silent PPO scheme, MultiPlan billed UniCare and United at the out-of-network reimbursement rate for services that Plaintiff provided to patients insured by UniCare and United. (#1, ¶ 20.) Thus, while payors have been accessing the discount rate, they have been reimbursing Plaintiff at an out-of-network reimbursement rate which is lower than the in-network reimbursement rate. (#1, ¶¶ 26, 27.) Plaintiff alleges that, because MultiPlan should have billed any payor who received the discount rate at the in-network reimbursement rate, this scheme reduced United and UniCare's financial obligation to their insureds who received Plaintiff's health care services. (#1, ¶¶ 20, 26, 27.)

Plaintiff alleges that United and UniCare have saved millions of dollars by improperly accessing the discount rate and reimbursing health care providers at the out-of-network reimbursement rate instead of the in-network reimbursement rate. (#1, ¶ 21.) United and UniCare allegedly paid a substantial percentage of these savings to MultiPlan. (#1, ¶ 21.) In addition, Plaintiff alleges that Defendants knew of the illegal nature of its Silent PPO. (#1, ¶ 35.)

Plaintiff alleges it was harmed because payors accessed the in-network discount rate when their insureds received health care services from Plaintiff, but payors did not provide incentives that "steered" patients to Christie. (#1, ¶ 3.) Patients were over-billed because United and UniCare reimbursed Plaintiff at the out-of-network reimbursement rate, and thus patients paid a higher co-payments than they would have had to pay if they were charged at the in-network reimbursement rate. (#1, ¶ 4.) Because payors accessed the discount rate but patients paid co-payments higher than co-payments for in-network services, Plaintiff received reduced payments for medical services without receiving the increased volume of patients that was to be the benefit of their bargain. (#1, ¶¶ 5, 20, 22.)

The complaint alleges six claims against Defendants, including breach of contract, civil conspiracy, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, *et seq.*), unjust enrichment, accounting and disgorgement, and injunctive relief

### 1.  Breach of Contract

In its breach of contract claim, Plaintiff alleges that Plaintiff and MultiPlan entered into the PPO Amendment in December 2004.  (#1, ¶ 66.)  Plaintiff had a contract with MultiPlan, but did not have a contract with United or UniCare; therefore, the Court construes the breach of contract claim to apply only to MultiPlan at this time.

Based on the language of the complaint, the Court construes this claim as alleging that Defendant MultiPlan breached the contract by (1) billing Defendants/payors United and UniCare at an out-of-network discount rate to which the payors were not entitled; and (2) failing to require United and UniCare to provide incentives.

### 2.  Illinois Consumer Fraud and Deceptive Business Practices Act Claim

Count III alleges a claim for violations of the Illinois Consumer Fraud and Deceptive Business Practice Act (815 ILCS 505/1 *et seq.*) (hereinafter "Consumer Fraud Act.  Plaintiff alleges it is a consumer within the definition of the act because "Defendants' business activities with [it] involve trade or commerce and are addressed to the market generally and/or otherwise implicate consumer protection concerns."  (#1, ¶ 78.)  Defendants are in the PPO business, and "therefore they have committed deceptive acts and practices in the arena of trade and commerce."  (#1, ¶ 82.)

First, Plaintiff alleges that Defendants engaged in an unfair and deceptive practice by regularly and systematically denying or reducing claims for payment of covered medical expenses.  (#1, ¶ 79.)  Second, Plaintiff alleges that Defendants engaged in an unfair and deceptive practice when Defendant MultiPlan entered into secret contracts with Defendants UniCare and United  that allowed UniCare and United patients to receive MultiPlan's discounted rate and billing system, but that failed to require United and UniCare to provide incentives to

their insureds to encourage them to use Plaintiff's services. (#1, ¶ 80.) Third, Plaintiff alleges that Defendants misrepresented, concealed, suppressed, or omitted the fact that United and UniCare were receiving the discount rate, and the reason they received those discount rates. (#1, ¶ 81.) Defendants intended that Plaintiff would rely on this deception so that the practice could continue without Plaintiff becoming aware of the arrangement. (#1, ¶ 81.)

### 3. Civil Conspiracy

In Count I, Plaintiff alleges that Defendants participated in a civil conspiracy under Illinois law by knowingly and voluntarily agreeing to, and participating in, a common scheme to contract unlawfully and otherwise improperly to Plaintiff's economic detriment. (#1, ¶¶ 57, 58.) Defendants had a "meeting of the minds" to keep their agreement secret from Plaintiff and to underpay Plaintiff for healthcare services that Plaintiff rendered. (#1, ¶ 59.)

Plaintiff alleges that UniCare and United planned, assisted, and encouraged MultiPlan to violate Illinois law and commit torts against Plaintiff by entering into the "Complimentary [sic] Network Client Benefit Programs" which did not require UniCare and United to provide incentives to patients to use Plaintiff's services. (#1, ¶ 60.) In addition, MultiPlan unlawfully contracted with Plaintiff in that it misrepresented the terms of the contract to Plaintiff. (#1, ¶ 62.) Plaintiff alleges that Defendants fraudulently hid their agreement and underpaid Plaintiff for health care services. (#1, ¶ 61.)

### 4. Unjust Enrichment

In Count IV, Plaintiff alleges that it conferred a benefit upon Defendants by providing healthcare services to patients. (#1, ¶ 85.) Plaintiff billed MultiPlan for the reasonable value of these services. (#1, ¶ 86.) MultiPlan determined the amount of the bills improperly and then sent these bills to be paid by United and UniCare, and all Defendants paid these bills at improperly reduced rates. (#1, ¶¶ 87, 88.) Defendants have provided no consideration to Plaintiff for their retention of the discounts. (#1, ¶ 89.) Plaintiff alleges that Defendants have knowingly reaped the benefit of substantial monetary savings by knowingly, wrongfully, and illegally applying discounted rates to medical expense claims under its policies. (#1, ¶¶ 90, 91.)

Plaintiff alleges that these savings constitute unjust enrichment for Defendants and it would be inequitable under the circumstances for them to retain the benefits received from Plaintiff without paying the full value to Plaintiff. (#1, ¶ 92.)

### 5. Accounting and Disgorgement

In Count V, Plaintiff alleges that an accounting by Defendants will reveal all monies obtained by MultiPlan that were wrongfully taken from Plaintiff because MultiPlan applied the discounted rate to "out of network" patients. (#1, ¶ 94.) These monies were wrongfully taken because payors that did not provide financial incentives to patients received a discount rate, in violation of MultiPlan's contractual duties. (#1, ¶ 95.) Plaintiff has no adequate remedy at law to account for all monies MultiPlan received from payors while MultiPlan was purportedly acting on behalf of Plaintiff in violation of MultiPlan's contractual duties. (#1, ¶ 96.)

### 6. Injunctive Relief

In Count VI, Plaintiff alleges that MultiPlan intends to continue to contract with UniCare and United without requiring those Defendants to channel and steer patients to MultiPlan's network through financial incentives, further obligating Plaintiffs to provide even more discounted fee-for-service to out-of-network patients. (#1, ¶ 98.) Plaintiff has no adequate remedy at law to prohibit MultiPlan from breaching its contract with Plaintiff in this manner. (#1, ¶ 99.) Therefore, Plaintiff seeks a permanent injunction against all Defendants prohibiting identical or similar deceptive practices. (#1, p. 23, E.)

### II. Standard

A motion to dismiss for failure to state a claim tests the sufficiency of the complaint; it does not decide the merits. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). On a motion to dismiss, the Court treats all well-pleaded allegations in the complaint as true, and grants all reasonable inferences in the plaintiff's favor. *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006); *see Bell Atl. Corp v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1965 (2007) (requiring plausible grounds for inferences if those inferences are to sustain a complaint).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The United States Supreme Court has interpreted this language to impose two "easy-to-clear hurdles": First, the plaintiff must plead sufficient facts to give fair notice of the claim and the ground upon which it rests, and second, those facts, if true, must plausibly suggest that the plaintiff is entitled to relief, "raising that possibility above a 'speculative level'." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (citing *Bell Atl.*, 127 S. Ct. at 1965, 1973 n.14).

### III. Analysis

Defendant United argues that the Court should dismiss the claims because (1) the terms of the contracts referred to in the complaint conclusively refute Plaintiff's core theory of breach; and (2) Plaintiff's complaint fails to state a claim against United with respect to fraud. United additionally seeks to incorporate other Defendants' arguments that Plaintiff failed to properly plead its claims for civil conspiracy, accounting and disgorgement, unjust enrichment, injunctive relief, punitive damages, and attorneys' fees. The Court addresses these additional arguments in those Reports and Recommendations for other Defendants' motions to dismiss.

### A. Breach of Contract Claim

As noted above, the Court construes the breach of contract claim as a claim against MultiPlan only. In its Report and Recommendation on MultiPlan's motion to dismiss, the Court recommended denying the motion to dismiss the breach of contract claim. The Court will not repeat all of its analysis here, but will briefly address United's arguments on this claim.

United argues that the breach of contract claim underlies all other claims and, because it should be dismissed, all other claims fail. In addition, United argues that Plaintiff's contract with MultiPlan is not fundamentally unfair. In its memorandum, United states, "[e]ach of the claims in this action depends on the allegation that MultiPlan's contract with United fails to require United to provide the sort of financial incentives to its members to obtain treatment from MultiPlan PPO providers that Plaintiff alleges are called for in Plaintiff's own contract with MultiPlan." (#31, p. 6.) United contends that it has complied with the terms of its contract with

MultiPlan, and "because there has been no breach of any contract, United is entitled to judgment as a matter of law on Plaintiff's breach of contract claim – as well as on each of the remaining counts in the Complaint, which depend on the same alleged breach." (#31, p. 7.)

United supports its contentions that Defendants did not breach the respective contracts with reference to the contract language and with factual information. Plaintiff responds that (1) United's interpretation of Plaintiff's contract with MultiPlan is factually inaccurate and inappropriate for a Rule 12(b)(6) dismissal; (2) it is improper for United to rely on language from its contract with MultiPlan for purposes of the motion to dismiss; only Plaintiff's contract with MultiPlan is relevant to the breach of contract claim; (3) alternatively, the terms of United's contract with MultiPlan do not comport with MultiPlan's contract with Plaintiff; and (4) at the motion to dismiss stage, the Court should consider only the allegations in the complaint.

As an initial matter, the Court notes that, under Federal Rule of Civil Procedure 10(c), courts may consider contracts that are attached to a defendant's motion to dismiss, if those contracts are referred to in the complaint and are central to the plaintiff's claims. *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994.) Nevertheless, if the court does consider a contract, it should not interpret any language that is ambiguous regarding the parties' intent; interpretation of contract language is a question of fact that a court cannot properly determine on a motion to dismiss. *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 373 (7th Cir. 1992.) Here, the contracts are central to Plaintiff's claims. Furthermore, Defendant presented the contracts along with its motion to dismiss and Plaintiff also attached the contracts in responding to the motion. Therefore, the Court may consider the contracts, consistent with the Seventh Circuit court's holding in *Dawson*.

Here, the parties' memoranda indicate that the interpretation of the contracts is disputed. At the motion to dismiss stage, the Court will not interpret the contracts, nor will it consider any factual information outside the allegations of the complaint. Therefore, the Court declines to address the merits of United's arguments concerning the contract language contained in Plaintiff's contract with MultiPlan or MultiPlan's contract with United.

In addition to its argument based on the contractual language, Defendant argues that the contract is not fundamentally unfair or deceptive. Plaintiff's response essentially mirrors the allegations in the complaint.

On a motion to dismiss, the Court must accept as true all well-pleaded allegations in the complaint. United's argument here depends on disputed facts, including Defendant's statements regarding whether United has provided legitimate consideration for Complementary Network Client Access and whether United did, in fact, provide adequate incentives, as well as on United's interpretation of the contract. Accordingly, the Court cannot consider this argument at the motion to dismiss stage.

Because the Court recommends denying the motion to dismiss the breach of contract claim at this time, it need not address United's argument that the lack of any breach of contract is fatal to Plaintiff's other claims.

### B. Fraud Claims and the Consumer Fraud Act Claim

Defendant United next argues that Plaintiff has failed to state claims for civil conspiracy, breach of contract, and consumer fraud because it has not satisfied the requirements of Federal Rule of Civil Procedure 9(b). United also argues that Plaintiff has failed to adequately plead a claim for relief under the Consumer Fraud Act.

### 1. Federal Rule of Civil Procedure 9(b)

United argues that Plaintiff failed to plead its fraud-based claims with particularity as required by Federal Rule of Civil Procedure 9(b). United states that this argument applies to the counts for civil conspiracy, breach of contract, and violation of the Consumer Fraud Act because each of those claims depend in substantial part on allegations that Defendants fraudulently misrepresented characteristics of the applicable contracts. Because the Court addresses the Consumer Fraud Act claim in a separate section, the Court will address this argument here only as it applies to the claims of civil conspiracy and breach of contract.

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). The circumstances of fraud or mistake include the identity of the party who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff. *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992); *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (a plaintiff must plead with specificity the who, what, where, and when of the alleged fraud or mistake).

Plaintiff contends that a less stringent pleading standard is appropriate in this circumstance, because Plaintiff is alleging fraud against a third party and thus does not have access to all facts necessary to plead Plaintiff's claims. "It is true that where a plaintiff is alleging fraud against a third party, less detail may be required under Rule 9(b) because the plaintiff may not have access to all the facts necessary to detail his claim." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992). However, the Seventh Circuit made it clear in *Uni\*Quality* that a plaintiff in such a situation must still allege who committed the fraud or made the fraudulent representation, when the fraud was committed, or the place where the fraudulent actions occurred. *Id*. Alternatively, Plaintiff responds with a conclusory statement that it had adequately pleaded the fraud-based claims. (#45, p. 12, "Plaintiff has sufficiently identified, in its pleading, the who, what and where of the alleged misrepresentation.") However, Plaintiff did not state which particular allegations in its complaint satisfy the requirements of Rule 9(b).

Rule 9(b) applies to "averments of fraud," not just to claims of fraud. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'– in other words, one that is premised upon a course of fraudulent conduct–can implicate Rule 9(b)'s heightened pleading requirements." *Id*. Thus, the rule applies to claims other than fraud where the plaintiff has made a factual allegation that there has been a misrepresentation. *Id*. In Plaintiff's claim for civil conspiracy, Plaintiff alleges that Defendant MultiPlan "misrepresented"

12

the terms of its contract with Plaintiff. (#1, ¶ 62.) Plaintiff's claim for breach of contract alleges that MultiPlan "misrepresented" the contract. (#1, ¶ 68.) The requirements of Rule 9(b) apply to these allegations.

The Court agrees that Plaintiff has failed to satisfy the particularity requirement of Rule 9(b) as to those allegations. Accordingly, the Court recommends striking the language that refers to misrepresentations from Paragraph 62 ("in that it misrepresented the terms of the contract to Plaintiff and the physician and hospital Classes") and Paragraph 68 ("misrepresented the contract and"). However, the claims at issue do not depend solely on allegations of misrepresentation, therefore, the Court does not recommend dismissing the claims in their entirety on the basis that Plaintiff failed to adequately plead these misrepresentations. If Plaintiff wishes to include averments of fraud in its claims, it must amend the complaint to allege the misrepresentations with particularity as required by Rule 9(b).

### 2. Failure To State A Consumer Fraud Act Claim

United next argues that Plaintiff's Consumer Fraud Act claim fails as a matter of law because Plaintiff cannot properly allege that it is a "consumer" under the Act or that it represents consumer protection concerns. Defendant also contends that Plaintiff's position is pitted *against* consumer interests because if Plaintiff is successful, consumers (that is, patients) would actually end up paying more for health care services.

The elements of a claim under the Consumer Fraud Act include (1) a deceptive act or practice, (2) intent on the defendant's part that the plaintiff rely on the deception, and (3) that the deception occurred in the course of conduct involving trade or commerce. 815 ILCS 505/2. The Consumer Fraud Act defines a consumer as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1. When a plaintiff itself is not a consumer, the plaintiff must satisfy the "consumer nexus" test by demonstrating that its claim implicates consumer protection concerns or trade practices addressed to the market generally. The Consumer Fraud Act does not apply to every commercial transaction regardless of the

relationship between the parties. *Lake County Grading Co. of Libertyville, Inc. v. Advance Mech. Contractors, Inc.*, 654 N.E.2d 1109, 1115-16 (Ill. App. Ct. 1995) (stating that when a plaintiff fails to explain how its particular breach of contract claim involves consumer protection concerns and the contract fails to implicate inherent consumer interests, a Consumer Fraud Act claim will not survive a motion to dismiss).

In response, Plaintiff states first that Defendants were consumers of Plaintiff's goods and services. This statement is factually untrue; Plaintiff did not provide health care services to Defendant-corporations. Moreover, if true, this statement would give Defendants standing to sue Plaintiff under the Consumer Fraud Act, not the other way around. Plaintiff also stated in conclusory fashion that "[u]nquestionably, Defendants' conduct involves trade practices addressed to the market and implicates consumer protection concerns." (#45, p. 13.) This statement simply mirrors the allegations in Plaintiff's complaint that Plaintiff is a consumer within the meaning of the Consumer Fraud Act because its business activities with Defendants involve trade or commerce, the activities are addressed to the market generally, and the activities otherwise implicate consumer protection concerns. (*See* #1, ¶ 78.) Plaintiff does not explain in its brief how its relationship with Defendants satisfies the consumer or consumer nexus standard.

Based on the statutory definition, Plaintiff is not a consumer under the Consumer Fraud Act. Plaintiff has provided no information or explanation from which the Court could conclude that Defendants' conduct implicates consumer protection concerns. The Court agrees with Defendant that Plaintiff has failed to allege that the Consumer Fraud Claim implicates consumer protection concerns. Accordingly, the Court recommends dismissing this claim.

### IV. Summary

For the reasons set forth above, this Court recommends striking certain language in Paragraphs 62 ("in that it misrepresented the terms of the contract to Plaintiff and the physician and hospital Classes") and Paragraph 68 ("misrepresented the contract and"). In addition, the

Court recommends that the Rule 12(b)(6) Defendant United Health Care's Motion To Dismiss **(#30)** be **GRANTED** for all Defendants as to the Consumer Fraud Act claim in Count III, and **DENIED** as to the civil conspiracy and breach of contract claims. Because it is conceivable that Plaintiff can amend its complaint to state a claim under the Consumer Protection Act, the Court recommends that the dismissal be without prejudice and that Plaintiff be granted leave to file an amended complaint within fourteen (14) days of the order ruling on the motion.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 10th day of September, 2008.

s/ DAVID G. BERNTHAL<br>U.S. MAGISTRATE JUDGE