UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | | |
|---|---|---|
| **CHRISTIE CLINIC, PC, individually and on behalf of others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | |
| **MULTIPLAN, INC.,** a New York corporation, **UNICARE LIFE & HEALTH INSURANCE COMPANY,** a Texas corporation, and **UNITED HEALTH CARE,** a subsidiary of United Health Group, a Minnesota corporation, | ) ) ) ) ) ) ) ) ) ) | **Case No. 08-2065** |
| **Defendants.** | ) | |

# REPORT AND RECOMMENDATION

In March 2008, Plaintiff Christie Clinic, P.C., filed a Complaint (#1) against Defendants MultiPlan, Inc. (hereinafter "MultiPlan"), UniCare Life and Health Insurance Company (hereinafter "UniCare"), and United Health Care, a subsidiary of United Health Group (hereinafter "United"). Federal jurisdiction is based on the Class Action Fairness Act (28 U.S.C. § 1565) and on diversity pursuant to 28 U.S.C. § 1332(d)(2)(A).

In May 2008, Defendant MultiPlan filed a Motion To Dismiss Plaintiff's Complaint (#24). In June 2008, Plaintiff filed a Response to Defendant MultiPlan's Motion To Dismiss (#41). After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendant MultiPlan Inc.'s Motion To Dismiss **(#24)** be **GRANTED** in part and **DENIED** in part.

## I. Background

### A. General Background

#### 1. The Parties' Relationship

The parties in this case include Plaintiff, MultiPlan, United, and UniCare. Plaintiff is a health care provider, that is, a corporation engaged in providing health care services performed

by licensed physicians and nurse practitioners.  (#1, ¶ 10.)  MultiPlan is a Preferred Provider Organization Administrator, that is, a company that works as an intermediary between health care providers and health insurance companies to create a Preferred Provider Organization network.  Defendants United and UniCare are health insurance companies, that is, companies that reimburse health care providers for services rendered to the companies' insureds.  The complaint refers to the health insurance companies as "payors."

The parties in this suit are related to each other through a Preferred Provider Organization (hereinafter "PPO") arrangement.  A PPO is designed to manage the provision of health care services through arrangements between health care providers (such as Christie), payors (such as United and UniCare), and a PPO Administrator (such as MultiPlan) who establishes this PPO arrangement.  (#1, ¶ 14.)  In PPO arrangements, health care providers agree to offer a discount rate to patients who are insured by payors in the network.  In return, payors with access to the discount rate must provide incentives to patients that "steer" them to the health care providers.  In this way, health care providers are compensated for the discount rate by an increase in volume of patients.  (#1, ¶¶ 15-16.)

Plaintiff filed the complaint as a class action, on behalf of (1) all licensed medical providers (physicians and hospitals) who (a) were parties to a MultiPlan Participating Primary PPO Provider Agreement, and (b) unknowingly and without their consent had MultiPlan preferred provider discounts taken against payments for medical services rendered to out-of-network patients; and (2) patients who have been improperly billed as a result of Defendant's conduct.  (#1, ¶ 44.)  However, because class certification is still pending at this stage, the Court will only consider Defendant's motion to dismiss only as it relates to Plaintiff Christie Clinic.

## 2. Legal Structure of PPOs in General

A PPO arrangement is created through two contracts.  First, health care providers contract with the PPO Administrator.  Health care providers agree to provide a discount rate to patients insured by network payors, and the PPO administrator agrees that it will obligate network payors to provide incentives to their insureds that "steer" those insureds to the preferred

health care providers. Second, the PPO administrator contracts with payors. The PPO administrator offers payors access to its contracts with preferred health care providers and the payors agree to provide incentives to their insureds that "steer" those insureds to the health care providers. In this way, the payors become responsible for providing the incentives specified in the contract between health care providers and the PPO administrator. (#1, ¶¶ 1, 3, 14-16, 24, 27.) Along with its motion to dismiss, Defendant presented contracts between MultiPlan and Plaintiff and between MultiPlan and United and MultiPlan and UniCare. Plaintiff also attached copies of the contracts to its response.

### 3. Plaintiff's Allegations Regarding the PPO Operation

In the complaint, Plaintiff refers to its patients that qualify for the discount rate (because those patients are insured by payors in the PPO) as "members" of the PPO, indicating that these individuals are "in-network" patients. Plaintiff's patients who are not insured by health insurance companies that qualify for the discount rate are "out-of-network" patients. Health insurance companies pay a larger portion of the cost of care when their insureds receive "in-network" health care services (hereinafter an "in-network reimbursement rate"); they pay a smaller portion of the cost of care for their insureds when the insureds receive "out-of-network" health care services (hereinafter an "out-of-network reimbursement rate").

As the PPO Administrator, MultiPlan is responsible for determining which of Plaintiff's patients are "in-network" and which are "out-of-network." Once MultiPlan makes this determination, it applies any applicable discount rate, it determines whether that patient's insurance company pays an "in-network reimbursement rate" or an "out-of-network" reimbursement rate, and it sends the bill to that patient's insurance company. The insurance company reimburses Plaintiff in the amount determined by MultiPlan. Plaintiff may "balance bill" the patient for the difference between the cost of care, minus any applicable discount rate, and the amount Plaintiff received from patient's insurance company.

### 4. History of the Parties' Agreements

Plaintiff alleges that it first entered into a PPO arrangement with Health Network, MultiPlan's predecessor, in 1990. (#1, ¶ 36.) Emergis acquired Health Network in 2000 and MultiPlan acquired Emergis in 2004. (#1, ¶¶ 37, 38.) In December 2004, Plaintiff and MultiPlan entered into an Amendment of Participating Primary PPO Provider Agreement (hereinafter "the PPO Amendment"), which is now the subject of this dispute. (#1, ¶¶ 41, 66.) Plaintiff alleges that the terms of the PPO Amendment obligated MultiPlan to enter into payor agreements only with payors who (1) sponsored preferred provider or exclusive provider health care coverage plans to patients, and (2) provided incentives to steer patients to preferred providers. (#1, ¶ 41.) MultiPlan subsequently contracted with payors UniCare and United. Plaintiff alleges that UniCare and United did not perform these obligations. (#1, ¶ 41.)

### B. Plaintiff's Claims

Plaintiff alleges that Defendants have engaged in a "Silent PPO." Plaintiff defines a Silent PPO as follows:

> [A Silent PPO is an] illegitimate appropriation of discounted reimbursement amounts by payors who do not offer a preferred provider or exclusive provider policy to patients and/or who do not offer any financial incentive mechanism (e.g. reduced co-payments, reduce [sic] deductibles, or reduced premiums) to steer or channel patients to preferred providers for receipt of medical services.

(#1, ¶ 18.)

Plaintiff alleges that, because Defendants have engaged in a Silent PPO, Plaintiff has received nothing in exchange for providing a discount, and Defendants have saved millions in reimbursements to providers because their insureds were billed at the wrong discount rate. (#1, ¶ 19.) Plaintiff alleges that UniCare and United have improperly accessed and appropriated the MultiPlan PPO discount rate by deceptively contracting with MultiPlan and using MultiPlan's provider database. (#1, ¶ 20.) United and UniCare's deceptive contracts with MultiPlan were not disclosed to Plaintiff. (#1, ¶ 6.) Plaintiff alleges that payors fraudulently presented their

insureds who received Plaintiff's health care services as in-network members who qualified for the in-network discount rate even though those insureds were not "steered" to Plaintiff with incentives. (#1, ¶ 28.)

Furthermore, as part of the Silent PPO scheme, MultiPlan billed UniCare and United at the out-of-network reimbursement rate for services that Plaintiff provided to patients insured by UniCare and United. (#1, ¶ 20.) Thus, while payors have been accessing the discount rate, they have been reimbursing Plaintiff at an out-of-network reimbursement rate which is lower than the in-network reimbursement rate. (#1, ¶¶ 26, 27.) Plaintiff alleges that MultiPlan should have billed any payor who received the discount rate at the in-network reimbursement rate. Because it billed payors at the out-of-network rate, this scheme reduced United and UniCare's financial obligation to their insureds who received Plaintiff's health care services. (#1, ¶¶ 20, 26, 27.)

Plaintiff alleges that United and UniCare have saved millions of dollars by improperly accessing the discount rate and reimbursing health care providers at the out-of-network reimbursement rate instead of the in-network reimbursement rate. (#1, ¶ 21.) United and UniCare allegedly paid a substantial percentage of these savings to MultiPlan. (#1, ¶ 21.) In addition, Plaintiff alleges that Defendants knew of the illegal nature of its Silent PPO. (#1, ¶ 35.)

Plaintiff alleges it was harmed because payors accessed the in-network discount rate when their insureds received health care services from Plaintiff, but payors did not provide incentives that "steered" patients to Christie. (#1, ¶ 3.) Patients were over-billed because United and UniCare reimbursed Plaintiff at the out-of-network reimbursement rate, and thus patients paid a higher co-payments than they would have had to pay if they were charged at the in-network reimbursement rate. (#1, ¶ 4.) Because payors accessed the discount rate but patients paid co-payments higher than co-payments for in-network services, Plaintiff received reduced payments for medical services without receiving the increased volume of patients that was to be the benefit of their bargain. (#1, ¶¶ 5, 20, 22.)

The complaint alleges six claims against Defendants, including breach of contract, civil conspiracy, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.*), unjust enrichment, accounting and disgorgement, and injunctive relief.  In addition, Plaintiff seeks attorney fees and punitive damages.

### 1.  Breach of Contract

In its breach of contract claim, Plaintiff alleges that Plaintiff and MultiPlan entered into the PPO Amendment in December 2004.  (#1, ¶ 66.)  Because Plaintiff had a contract with MultiPlan, but did not have a contract with United or UniCare, the Court construes the breach of contract claim to apply only to MultiPlan at this time.

Based on the language of the complaint, the Court construes this claim as alleging that Defendant MultiPlan breached the contract by (1) billing Defendants/payors United and UniCare at an out-of-network discount rate to which the payors were not entitled; and (2) failing to require United and UniCare to provide incentives.

### 2.  Illinois Consumer Fraud and Deceptive Business Practices Act Claim

Count III alleges a claim for violations of the Illinois Consumer Fraud and Deceptive Business Practice Act (815 ILCS 505/1 *et seq.*) (hereinafter "Consumer Fraud Act).  Plaintiff alleges it is a consumer within the definition of the act because "Defendants' business activities with [it] involve trade or commerce and are addressed to the market generally and/or otherwise implicate consumer protection concerns."  (#1, ¶ 78.)  Defendants are in the PPO business, and "therefore they have committed deceptive acts and practices in the arena of trade and commerce."  (#1, ¶ 82.)

First, Plaintiff alleges that Defendants engaged in an unfair and deceptive practice by regularly and systematically denying or reducing claims for payment of covered medical expenses.  (#1, ¶ 79.)  Second, Plaintiff alleges that Defendants engaged in an unfair and deceptive practice when Defendant MultiPlan entered into secret contracts with Defendants UniCare and United that allowed UniCare and United patients to receive MultiPlan's discounted

rate and billing system, but that failed to require United and UniCare to provide incentives to their insureds to encourage them to use Plaintiff's services. (#1, ¶ 80.)  Third, Plaintiff alleges that Defendants misrepresented, concealed, suppressed, or omitted the fact that United and UniCare were receiving the discount rate, and the reason they received those discount rates. (#1, ¶ 81.)  Defendants intended that Plaintiff would rely on this deception so that the practice could continue without Plaintiff becoming aware of the arrangement. (#1, ¶ 81.)

### 3. Civil Conspiracy

In Count I, Plaintiff alleges that Defendants participated in a civil conspiracy under Illinois law by knowingly and voluntarily agreeing to, and participating in, a common scheme to contract unlawfully and otherwise improperly to Plaintiff's economic detriment. (#1, ¶¶ 57, 58.)  Defendants had a "meeting of the minds" to keep their agreement secret from Plaintiff and to underpay Plaintiff for healthcare services that Plaintiff rendered. (#1, ¶ 59.)

Plaintiff alleges that UniCare and United planned, assisted, and encouraged MultiPlan to violate Illinois law and commit torts against Plaintiff by entering into the "Complimentary [sic] Network Client Benefit Programs" which did not require UniCare and United to provide incentives to patients to use Plaintiff's services. (#1, ¶ 60.)  In addition, MultiPlan unlawfully contracted with Plaintiff in that it misrepresented the terms of the contract to Plaintiff. (#1, ¶ 62.)  Plaintiff also alleges that Defendants fraudulently hid their agreement and underpaid Plaintiff for health care services. (#1, ¶ 61.)

### 4. Unjust Enrichment

In Count IV, Plaintiff alleges that it conferred a benefit upon Defendants by providing healthcare services to patients. (#1, ¶ 85.)  Plaintiff billed MultiPlan for the reasonable value of these services. (#1, ¶ 86.)  MultiPlan determined the amount of the bills improperly and then sent these bills to be paid by United and UniCare, and all Defendants paid these bills at improperly reduced rates. (#1, ¶¶ 87, 88.)  Defendants have provided no consideration to Plaintiff for their retention of the discounts. (#1, ¶ 89.)  Plaintiff alleges that Defendants have knowingly reaped the benefit of substantial monetary savings by knowingly, wrongfully, and

illegally applying discounted rates to medical expense claims under its policies. (#1, ¶¶ 90, 91.) Plaintiff alleges that these savings constitute unjust enrichment for Defendants and it would be inequitable under the circumstances for them to retain the benefits received from Plaintiff without paying the full value to Plaintiff. (#1, ¶ 92.)

### 5.  Accounting and Disgorgement

In Count V, Plaintiff alleges that an accounting by Defendants will reveal all monies obtained by MultiPlan that were wrongfully taken from Plaintiff because MultiPlan applied the discounted rate to "out-of-network" patients. (#1, ¶ 94.)  These monies were wrongfully taken because payors that did not provide financial incentives to patients received a discount rate, in violation of MultiPlan's contractual duties. (#1, ¶ 95.)  Plaintiff has no adequate remedy at law to account for all monies MultiPlan received from payors while MultiPlan was purportedly acting on behalf of Plaintiff in violation of MultiPlan's contractual duties. (#1, ¶ 96.)

### 6.  Injunctive Relief

In Count VI, Plaintiff alleges that MultiPlan intends to continue to contract with Defendants UniCare and United without requiring those Defendants to channel and steer patients to MultiPlan's network through financial incentives, further obligating Plaintiffs to provide even more discounted fee-for-service to out-of-network patients. (#1, ¶ 98.)  Plaintiff has no adequate remedy at law to prohibit MultiPlan from breaching its contract with Plaintiff in this manner. (#1, ¶ 99.)  Therefore, Plaintiff seeks a permanent injunction against all Defendants prohibiting identical or similar deceptive practices. (#1, p. 23, E.)

## II.  Standard

A motion to dismiss for failure to state a claim tests the sufficiency of the complaint; it does not decide the merits. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990).  On a motion to dismiss, the Court treats all well-pleaded allegations in the complaint as true, and grants all reasonable inferences in the plaintiff's favor. *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006); *see Bell Atl. Corp v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1965 (2007) (requiring plausible grounds for inferences if those inferences are to sustain a complaint).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The United States Supreme Court has interpreted this language to impose two "easy-to-clear hurdles": First, the plaintiff must plead sufficient facts to give fair notice of the claim and the ground upon which it rests, and second, those facts, if true, must plausibly suggest that the plaintiff is entitled to relief, "raising that possibility above a 'speculative level'." *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776-77 (7th Cir. 2007) (citing *Bell Atl.*, 127 S. Ct. at 1965, 1973 n.14).

### III. Analysis

Defendant MultiPlan argues that the Court should dismiss the claims against it for the following reasons: (1) Regarding the breach of contract claim, MultiPlan did not breach the contract and Plaintiff was not deceived by the content of the contract; (2) Plaintiff has failed to adequately plead a claim for civil conspiracy; (3) Plaintiff has failed to plead a claim under the Consumer Fraud Act; (4) the contract between MultiPlan and Plaintiff precludes the unjust enrichment claim; alternatively, Plaintiff has failed to state a claim; (5) Plaintiff is not entitled to an accounting; (6) Plaintiff is not entitled to injunctive relief; and (7) Plaintiff is not entitled to attorney fees or punitive damages.

#### A. Breach of Contract Claim

Defendant MultiPlan first argues that the Court should dismiss the breach of contract claim because MultiPlan did not breach the contract by failing to contract with payors for steerage incentives and Plaintiff was not deceived by the content of the contract. Defendant specifically contends that its contracts with Defendants UniCare and United contained provisions for UniCare and United to provide incentives, thus the language of the contracts refutes Plaintiff's claim that MultiPlan breached the contract. In support, Defendant refers to the contracts.

As an initial matter, the Court notes that Federal Rule of Civil Procedure 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(c). The Seventh Circuit court has indicated that, under Rule

9

10(c), courts may consider contracts that are attached to a defendant's motion to dismiss, if those contracts are referred to in the complaint and are central to the plaintiff's claims. *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994.) Nevertheless, if the court does consider a contract, the court should not interpret any language that is ambiguous regarding the parties' intent; interpretation of contract language is a question of fact that a court cannot properly determine on a motion to dismiss. *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 373 (7th Cir. 1992.) Here, the contracts are central to Plaintiff's claims. Furthermore, Defendant presented the contracts along with its motion to dismiss and Plaintiff also attached the contracts in responding to the motion. Therefore, the Court may consider the contracts, consistent with the Seventh Circuit court's holding in *Dawson*.

Here, the parties' memoranda indicate that the interpretation of the contract is disputed. At the motion to dismiss stage, the Court will not interpret the contract, nor will it consider any factual information outside the allegations of the complaint. Accordingly, the Court recommends denying Defendant's motion to dismiss the breach of contract claim at this time.

### B.  Civil Conspiracy Claim

Defendant next argues that Plaintiff failed to adequately plead a claim for civil conspiracy because Plaintiff did not allege facts sufficient to rise above the speculative level. Specifically, Defendant states that Plaintiff has alleged the existence of a conspiracy, but contends that Plaintiff failed to allege an underlying wrong.

The Court disagrees. The civil conspiracy claim alleges that Defendants conspired to obtain the benefit of discounted rates while refusing to provide appropriate corresponding incentives. At this stage, Plaintiff's allegations are sufficient to state a claim. Accordingly, the Court recommends denying Defendant's motion to dismiss the civil conspiracy claim.

### C.  Consumer Fraud Act Claim

Defendant next argues that Plaintiff failed to plead a claim under the Consumer Fraud Act because (1) Plaintiff failed to plead fraud with sufficient particularity; (2) Plaintiff failed to

plead the elements of consumer fraud including an unfair practice and deception; and (3) Plaintiff's claim is based on contract, not fraud.

In its Report and Recommendation on Defendant United's motion to dismiss, the Court addresses this claim and recommends dismissing it as to all Defendants. Consistent with that recommendation, the Court recommends dismissing the Consumer Fraud Act claim.

### D.  Unjust Enrichment Claim

Defendant next argues that Plaintiff has failed to plead a claim for unjust enrichment. Specifically, Defendant contends that (1) the written contract between MultiPlan and Plaintiff precludes the unjust enrichment claim; and (2) Plaintiff has not alleged sufficient facts to maintain this claim because Plaintiff did not allege that it provided MultiPlan with notice and an opportunity to make restitution. *See Tudor v. Jewel Food Stores, Inc.*, 618 N.E.2d 6, 11-12 (Ill. App. Ct. 1997) (stating that a plaintiff must plead that it provided the opposing party with notice and an opportunity to make restitution).

In *Roche v. Travelers Property Casualty Insurance Company*, the Southern District court dismissed an unjust enrichment claim by a health care provider against a payor, stating that the unjust enrichment claim was "merely a reiteration" of the plaintiff's earlier breach of contract claim. *Roche v. Travelers Prop. Cas. Ins. Co.*, No. 07-cv-302-JPG, 2008 WL 2875250, *7 (S.D. Ill. July 24, 2008) (unreported). Here, however, the allegations in the unjust enrichment claim indicate that Plaintiff is alleging more than a claim based on breach of the contract between MultiPlan and Plaintiff.

Defendant's second argument appears to confuse fact pleading with notice pleading. Plaintiff's claim for unjust enrichment is governed by the liberal notice pleading standard of Federal Rule of Civil Procedure 8, pursuant to which a plaintiff need only allege a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). *See Knowles v. Hopson*, No. 07-CV-6131, 2008 WL 2414849, *2 (N.D .Ill. June 12, 2008) (unreported) (relying on notice pleading standards when denying a motion to dismiss an

unjust enrichment claim). Furthermore, the facts in the *Tudor* case are quite different from the basis for the claim in this case: In *Tudor*, the unjust enrichment claim was premised on the mistaken transfer of an excessive amount of money and the court agreed that, when the claim is based on mistake, there is no breach until the "transferee or beneficiary has notice of the facts upon which the transferor's right depends and has had a reasonable opportunity for making restitution." *Tudor*, 618 N.E.2d at 11 (citing Restatement of Restitution § 63 (1937)). Nevertheless, the *Tudor* court recognized that when an unjust enrichment claim is based on fraudulent conduct instead of mistake, the defendant already has notice of relevant facts and the plaintiff need not plead notice. *Id.* at 12 ("If the transferee acquires the subject matter by fraud his duty to make restitution arises at once; he then has notice of relevant facts and of his duty to restore") (citing Restatement of Restitution § 63, Comment *a,* at 245 (1937)). In this case, there are no allegations that the unjust enrichment claim is based on mistake; instead, it is based, at least in part, on fraudulent conduct.

Here, Plaintiff has adequately alleged a claim for unjust enrichment. Accordingly, the Court recommends denying Defendant's motion to dismiss the unjust enrichment claim.

### E. Accounting Claim

Defendant next argues that the Court should dismiss the accounting claim because Plaintiff has not alleged facts sufficient to entitle it to an accounting.

According to the Northern District court, to allege the remedy of an equitable accounting, a plaintiff "must allege the absence of an adequate remedy at law and one of the following: (1) a breach of a fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature." *Waldock v. M.J. Select Global, Ltd.*, No. 03 C 5293, 2005 WL 3542527, *13 (N.D. Ill. Dec. 27, 2005) (unreported) (quoting *Hartigan v. Candy Club*, 501 N.E.2d 188, 190 (Ill. App. Ct. 1986)). Plaintiff has alleged that it does not have an adequate remedy at law, but Defendant contends that it has not satisfied the second requirement.

In its memorandum, Plaintiff responds that it has a fiduciary relationship with MultiPlan, the accounts shared among Defendants are particularly complex, and an accounting is necessary for full prosecution of Plaintiff's claim, particularly in light of the fraudulent conduct alleged in the complaint. The Court disagrees with Plaintiff's statement that a fiduciary relationship exists between MultiPlan and Plaintiff; absent any information or allegations to the contrary, it appears from the complaint that the parties' relationship was based solely on contract. However, it is true that Plaintiff has alleged a claim of civil conspiracy based in part on fraudulent conduct. Furthermore, although a plaintiff cannot amend its complaint through arguments presented in its legal memoranda (*Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993)), the allegations in the complaint make it clear to the Court that accounting for the claims in this case will be complex. "[A] court has broad discretion to determine whether it is appropriate to order an accounting." *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985). Here, Plaintiff has adequately alleged a claim for accounting at this time and the Court recommends denying the motion to dismiss.

**F. Injunctive Relief Claim and Requests for Attorney Fees and Punitive Damages**

Defendant next argues that Plaintiff is not entitled to injunctive relief or attorney fees or punitive damages.

Plaintiff has failed to respond to these arguments. Courts have no duty to research and construct legal arguments. *Head Start Family Educ. Program, Inc. v. Coop. Educ. Serv. Agency 11*, 46 F.3d 629, 635 (7th Cir. 1995). The Seventh Circuit has made it clear that a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point. *Doe v. Johnson,* 52 F.3d 1448, 1457 (7th Cir. 1995); *Sullivan v. Rilling*, No. 94 C 539, 1999 WL 199602, *6 (N.D. Ill., Mar. 31,1999) (unreported) (parties who present only "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority" have effectively forfeited those arguments) (quoting *United States v. Schimmel*, 950 F.2d 432, 434 n.1 (7th Cir. 1991)). Accordingly, the Court

recommends granting Defendant's motion to dismiss the injunctive relief claim and the requests for attorney fees and punitive damages as to all Defendants.

### IV.  Summary

For the reasons set forth above, this Court recommends that Defendant MultiPlan, Inc's Motion To Dismiss Plaintiff's Complaint **(#24)** be **GRANTED** as to all Defendants as to the Consumer Fraud Act claim, the claim for injunctive relief, and the requests for attorney fees and punitive damages; and that the motion be **DENIED** as to the remaining claims.  Because it is conceivable that Plaintiff can amend its complaint to state claims, the Court recommends that the dismissal be without prejudice and that Plaintiff be granted leave to file an amended complaint within fourteen (14) days of the order ruling on the motion.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 10th day of September, 2008.

 s/ DAVID G. BERNTHAL  
U.S. MAGISTRATE JUDGE
