**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**Urbana Division**

| | |
|---|---|
| **CHRISTIE CLINIC, PC, individually and on behalf of others similarly situated,** ) ) ) **Plaintiff,** ) v. ) ) **MULTIPLAN, INC.,** ) a New York corporation, ) **UNICARE LIFE & HEALTH** ) **INSURANCE COMPANY,** ) a Texas corporation, and ) **UNITED HEALTH CARE,** ) a subsidiary of United Health Group, ) a Minnesota corporation, ) **Defendants.** ) | Case No. 08-2065 |

# REPORT AND RECOMMENDATION

In March 2008, Plaintiff Christie Clinic, P.C., filed a Complaint (#1) against Defendants MultiPlan, Inc. (hereinafter "MultiPlan"), UniCare Life and Health Insurance Company (hereinafter "UniCare"), and United Health Care, a subsidiary of United Health Group (hereinafter "United"). Federal jurisdiction is based on the Class Action Fairness Act (28 U.S.C. § 1565) and on diversity pursuant to 28 U.S.C. § 1332(d)(2)(A).

In May 2008, Defendant UniCare filed a Motion To Dismiss Plaintiff's Complaint (#21). In June 2008, Plaintiff filed a Response to Defendant UniCare's Motion To Dismiss (#43). After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendant UniCare's Motion To Dismiss Plaintiff's Complaint **(#21)** be **GRANTED** in part and **DENIED** in part.

## I. Background

### A. General Background

#### 1. The Parties and Their Relationship

The parties in this case include Plaintiff, MultiPlan, United, and UniCare. Plaintiff is a health care provider, that is, a corporation engaged in providing health care services performed

by licensed physicians and nurse practitioners. (#1, ¶ 10.) MultiPlan is a Preferred Provider Organization Administrator, that is, a company that works as an intermediary between health care providers and health insurance companies to create a Preferred Provider Organization network. Defendants United and UniCare are health insurance companies, that is, companies that reimburse health care providers for services rendered to the companies' insureds. The complaint refers to the health insurance companies as "payors."

The parties in this suit are related to each other through a Preferred Provider Organization (hereinafter "PPO") arrangement. A PPO is designed to manage the provision of health care services through arrangements between health care providers (such as Christie), payors (such as United and UniCare), and a PPO Administrator (such as MultiPlan) who establishes this PPO arrangement. (#1, ¶ 14.) In PPO arrangements, health care providers agree to offer a discount rate to patients who are insured by payors in the network. In return, payors with access to the discount rate must provide incentives to patients that "steer" them to the health care providers. In this way, health care providers are compensated for the discount rate by an increase in volume of patients. (#1, ¶¶ 15-16.)

Plaintiff filed the complaint as a class action, on behalf of (1) all licensed medical providers (physicians and hospitals) who (a) were parties to a MultiPlan Participating Primary PPO Provider Agreement, and (b) unknowingly and without their consent had MultiPlan preferred provider discounts taken against payments for medical services rendered to out-of-network patients; and (2) patients who have been improperly billed as a result of Defendant's conduct. (#1, ¶ 44.) However, because class certification is still pending at this stage, the Court will only consider Defendant's motion to dismiss only as it relates to Plaintiff Christie Clinic.

## 2. Legal Structure of PPOs in General

A PPO arrangement is created through two contracts. First, health care providers contract with the PPO Administrator. Health care providers agree to provide a discount rate to patients insured by network payors, and the PPO administrator agrees that it will obligate network payors to provide incentives to their insureds that "steer" those insureds to the preferred

health care providers. Second, the PPO administrator contracts with payors. The PPO administrator offers payors access to its contracts with preferred health care providers and the payors agree to provide incentives to their insureds that "steer" those insureds to the health care providers. In this way, the payors become responsible for providing the incentives specified in the contract between health care providers and the PPO administrator. (#1, ¶¶ 1, 3, 14-16, 24, 27.) Along with its motion to dismiss, Defendant presented contracts between MultiPlan and Plaintiff and between MultiPlan and United and MultiPlan and UniCare. Plaintiff also attached copies of the contracts to its response.

### 3. Plaintiff's Allegations Regarding the PPO Operation

In the complaint, Plaintiff refers to its patients that qualify for the discount rate (because those patients are insured by payors in the PPO) as "members" of the PPO, indicating that these individuals are "in-network" patients. Plaintiff's patients who are not insured by health insurance companies that qualify for the discount rate are "out-of-network" patients. Health insurance companies pay a larger portion of the cost of care when their insureds receive "in-network" health care services (hereinafter an "in-network reimbursement rate"); they pay a smaller portion of the cost of care for their insureds when the insureds receive "out-of-network" health care services (hereinafter an "out-of-network reimbursement rate").

As the PPO Administrator, MultiPlan is responsible for determining which of Plaintiff's patients are "in-network" and which are "out-of-network." Once MultiPlan makes this determination, it applies any applicable discount rate, it determines whether that patient's insurance company pays an "in-network reimbursement rate" or an "out-of-network" reimbursement rate, and it sends the bill to that patient's insurance company. The insurance company reimburses Plaintiff in the amount determined by MultiPlan. Plaintiff may "balance bill" the patient for the difference between the cost of care, minus any applicable discount rate, and the amount Plaintiff received from patient's insurance company.

3

### 4. History of the Parties' Agreements

Plaintiff alleges that it first entered into a PPO arrangement with Health Network, MultiPlan's predecessor, in 1990. (#1, ¶ 36.) Emergis acquired Health Network in 2000 and MultiPlan acquired Emergis in 2004. (#1, ¶¶ 37, 38.) In December 2004, Plaintiff and MultiPlan entered into an Amendment of Participating Primary PPO Provider Agreement (hereinafter "the PPO Amendment"), which is now the subject of this dispute. (#1, ¶¶ 41, 66.) Plaintiff alleges that the terms of the PPO Amendment obligated MultiPlan to enter into payor agreements only with payors who (1) sponsored preferred provider or exclusive provider health care coverage plans to patients, and (2) provided incentives to steer patients to preferred providers. (#1, ¶ 41.) MultiPlan subsequently contracted with payors UniCare and United. Plaintiff alleges that UniCare and United did not perform these obligations. (#1, ¶ 41.)

### B. Plaintiff's Claims

Plaintiff alleges that Defendants have engaged in a " Silent PPO." Plaintiff defines a Silent PPO as follows:

> [A Silent PPO is an] illegitimate appropriation of discounted reimbursement amounts by payors who do not offer a preferred provider or exclusive provider policy to patients and/or who do not offer any financial incentive mechanism (e.g. reduced co-payments, reduce [sic] deductibles, or reduced premiums) to steer or channel patients to preferred providers for receipt of medical services.

(#1, ¶ 18.)

Plaintiff alleges that, because Defendants have engaged in a Silent PPO, Plaintiff has received nothing in exchange for providing a discount, and Defendants have saved millions in reimbursements to providers because their insureds received the wrong discount rate. (#1, ¶ 19.) Plaintiff alleges that UniCare and United have improperly accessed and appropriated the MultiPlan PPO discount rate by deceptively contracting with MultiPlan and using MultiPlan's provider database. (#1, ¶ 20.) United and UniCare's deceptive contracts with MultiPlan were not disclosed to Plaintiff. (#1, ¶ 6.) Plaintiff alleges that payors fraudulently presented their

4

insureds who received Plaintiff's health care services as in-network members who qualified for the in-network discount rate by implying those insureds were "steered" to Plaintiff with incentives. (#1, ¶ 28.)

Furthermore, as part of the Silent PPO scheme, MultiPlan billed UniCare and United at the out-of-network reimbursement rate for services that Plaintiff provided to patients insured by UniCare and United. (#1, ¶ 20.) Thus, while payors have been accessing the discount rate, they have been reimbursing Plaintiff at an out-of-network reimbursement rate which is lower than the in-network reimbursement rate. (#1, ¶¶ 26, 27.) Plaintiff alleges that, because MultiPlan should have billed any payor who received the discount rate at the in-network reimbursement rate, this scheme reduced United and UniCare's financial obligation to their insureds who received Plaintiff's health care services. (#1, ¶¶ 20, 26, 27.)

Plaintiff alleges that United and UniCare have saved millions of dollars by improperly accessing the discount rate and reimbursing health care providers at the out-of-network reimbursement rate instead of the in-network reimbursement rate. (#1, ¶ 21.) United and UniCare allegedly paid a substantial percentage of these savings to MultiPlan. (#1, ¶ 21.) In addition, Plaintiff alleges that Defendants knew of the illegal nature of its Silent PPO. (#1, ¶ 35.)

Plaintiff alleges it was harmed because payors accessed the in-network discount rate when their insureds received health care services from Plaintiff, but payors did not provide incentives that "steered" patients to Christie. (#1, ¶ 3.) Patients were over-billed because United and UniCare reimbursed Plaintiff at the out-of-network reimbursement rate, and thus patients paid a higher co-payments than they would have had to pay if they were charged at the in-network reimbursement rate. (#1, ¶ 4.) Because payors accessed the discount rate but patients paid co-payments higher than co-payments for in-network services, Plaintiff received reduced payments for medical services without receiving the increased volume of patients that was to be the benefit of their bargain. (#1, ¶¶ 5, 20, 22.)

The complaint alleges six counts against Defendants, including civil conspiracy, breach of contract, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq.), unjust enrichment, accounting and disgorgement, and injunctive relief.

### 1. Illinois Consumer Fraud and Deceptive Business Practices Act Claim

Count III alleges a claim against all Defendants for violations of the Illinois Consumer Fraud and Deceptive Business Practice Act (815 ILCS 505/1 *et seq.*) (hereinafter "Consumer Fraud Act"). Plaintiff alleges it is a consumer within the definition of the act because "Defendants' business activities with [it] involve trade or commerce and are addressed to the market generally and/or otherwise implicate consumer protection concerns." (#1, ¶ 78.) Defendants are in the PPO business, and "therefore they have committed deceptive acts and practices in the arena of trade and commerce." (#1, ¶ 82.)

Plaintiff alleges that Defendants engaged in an unfair and deceptive practice in three ways: (1) by regularly and systematically denying or reducing claims for payment of covered medical expenses (#1, ¶ 79); (2) by entering into secret contracts that allowed UniCare and United patients to receive MultiPlan's discounted rate and billing system, but failed to require United and UniCare to provide incentives to their insureds to encourage them to use Plaintiff's services (#1, ¶ 80); and (3) by misrepresenting or hiding the fact that United and UniCare were receiving the discount rate, and the reason they received those discount rates (#1, ¶ 81). Defendants intended that Plaintiff would rely on this deception so that the practice could continue without Plaintiff becoming aware of the arrangement. (#1, ¶ 81.)

### 2. Breach of Contract

In its breach of contract claim, Plaintiff alleges that Plaintiff and MultiPlan entered into the PPO Amendment in December 2004. (#1, ¶ 66.) Plaintiff had a contract with MultiPlan, but did not have a contract with United or UniCare; therefore, the Court construes the breach of contract claim to apply only to MultiPlan at this time.

Based on the language of the complaint, the Court construes this claim as alleging that Defendant MultiPlan breached the contract by (1) billing Defendants/payors United and UniCare at an out-of-network discount rate to which the payors were not entitled; and (2) failing to require United and UniCare to provide incentives.

### 3. Civil Conspiracy

In Count I, Plaintiff alleges that Defendants participated in a civil conspiracy under Illinois law by knowingly and voluntarily agreeing to, and participating in, a common scheme to contract unlawfully and otherwise improperly to Plaintiff's economic detriment. (#1, ¶¶ 57, 58.) Defendants had a "meeting of the minds" to keep their agreement secret from Plaintiff and to underpay Plaintiff for healthcare services that Plaintiff rendered. (#1, ¶ 59.)

Plaintiff alleges that UniCare and United planned, assisted, and encouraged MultiPlan to violate Illinois law and commit torts against Plaintiff by entering into the "Complimentary [sic] Network Client Benefit Programs" which did not require UniCare and United to provide incentives to patients to use Plaintiff's services. (#1, ¶ 60.) In addition, MultiPlan unlawfully contracted with Plaintiff in that it misrepresented the terms of the contract to Plaintiff. (#1, ¶ 62.) Plaintiff also alleges that Defendants fraudulently hid their agreement and underpaid Plaintiff for health care services. (#1, ¶ 61.)

### 4. Unjust Enrichment

In Count IV, Plaintiff alleges that it conferred a benefit upon Defendants by providing healthcare services to patients. (#1, ¶ 85.) Plaintiff billed MultiPlan for the reasonable value of these services. (#1, ¶ 86.) MultiPlan determined the amount of the bills improperly and then sent these bills to be paid by United and UniCare, and all Defendants paid these bills at improperly reduced rates. (#1, ¶¶ 87, 88.) Defendants have provided no consideration to Plaintiff for their retention of the discounts. (#1, ¶ 89.) Plaintiff alleges that Defendants have knowingly reaped the benefit of substantial monetary savings by knowingly, wrongfully, and illegally applying discounted rates to medical expense claims under its policies. (#1, ¶¶ 90, 91.)

Plaintiff alleges that these savings constitute unjust enrichment for Defendants and it would be inequitable under the circumstances for them to retain the benefits received from Plaintiff without paying the full value to Plaintiff. (#1, ¶ 92.)

### 5. Accounting and Disgorgement

In Count V, Plaintiff alleges that an accounting by Defendants will reveal all monies obtained by MultiPlan that were wrongfully taken from Plaintiff because MultiPlan applied the discounted rate to "out of network" patients. (#1, ¶ 94.) These monies were wrongfully taken because payors that did not provide financial incentives to patients received a discount rate, in violation of MultiPlan's contractual duties. (#1, ¶ 95.) Plaintiff has no adequate remedy at law to account for all monies obtained by MultiPlan from payors while MultiPlan was purportedly acting on behalf of Plaintiff in violation of MultiPlan's contractual duties. (#1, ¶ 96.)

### 6. Injunctive Relief

In Count VI, Plaintiff alleges that MultiPlan intends to continue to contract with UniCare and United without requiring those Defendants to channel and steer patients to MultiPlan's network through financial incentives, further obligating Plaintiffs to provide even more discounted fee-for-service to out-of-network patients. (#1, ¶ 98.) Plaintiff has no adequate remedy at law to prohibit MultiPlan from breaching its contract with Plaintiff in this manner. (#1, ¶ 99.) Therefore, Plaintiff seeks a permanent injunction against all Defendants prohibiting identical or similar deceptive practices. (#1, p. 23, E.)

## II. Standard

A motion to dismiss for failure to state a claim tests the sufficiency of the complaint; it does not decide the merits. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). On a motion to dismiss, the Court treats all well-pleaded allegations in the complaint as true, and grants all reasonable inferences in the plaintiff's favor. *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006); *see Bell Atl. Corp v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1965 (2007) (requiring plausible grounds for inferences if those inferences are to sustain a complaint).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The United States Supreme Court has interpreted this language to impose two "easy-to-clear hurdles": First, the plaintiff must plead sufficient facts to give fair notice of the claim and the ground upon which it rests, and second, those facts, if true, must plausibly suggest that the plaintiff is entitled to relief, "raising that possibility above a 'speculative level'." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (citing *Bell Atl.*, 127 S. Ct. at 1965, 1973 n.14).

### III. Analysis

Defendant UniCare argues that the Court should dismiss the claims because (1) Plaintiff failed to adequately plead a civil conspiracy claim; (2) Plaintiff cannot allege breach of contract against UniCare because there is no contract between Plaintiff and UniCare; (3) Plaintiff's Consumer Fraud Act claim is deficient because Plaintiff lacks standing, UniCare did not engage in a deceptive act, the claim does not satisfy Rule 9(b), and a breach of contract is not actionable under the Consumer Fraud Act; (4) Plaintiff failed to allege a claim for unjust enrichment because there is no underlying injury and Plaintiff failed to plead unjust enrichment with particularity; (5) Plaintiff failed to state a claim for accounting; and (6) Plaintiff failed to state a claim for injunctive relief.

#### A. Civil Conspiracy Claim

Defendant UniCare first argues that Plaintiff has failed to allege (1) the existence of an agreement, or (2) an underlying tortious or unlawful act.

Defendant first contends that Plaintiff failed to allege facts that support the existence of an agreement. Defendant relies on Illinois case law to support the proposition that conclusory allegations and failure to allege "concert of action" are insufficient to allege a conspiracy claim. *See Buckner v. Atl. Plant Maint., Inc.*, 182 Ill. 2d 12, 24 (Ill. 1998) (stating that a plaintiff must plead facts essential to his cause of action). This argument appears to confuse fact pleading with notice pleading. *Id.* ("In Illinois, a plaintiff must plead the facts essential to his cause of action"). Plaintiff's civil conspiracy claim is governed by the liberal notice pleading standard of

9

Federal Rule of Civil Procedure 8, pursuant to which a plaintiff need only allege a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To plead a conspiracy in federal court, a plaintiff must allege only the parties involved, its general purpose, and the approximate date to provide the defendants with notice of the claim. *Sellers v. Daniels*, 242 Fed. App'x 363, 364 (7th Cir. 2007) (citing *Loubser v. Thacker,* 440 F.3d 439, 442-43 (7th Cir.), *cert. denied,* --- U.S. ----, 126 S. Ct. 2944, 165 L. Ed. 2d 956 (2006) (describing what a plaintiff must plead to allege conspiracy in the context of 42 U.S.C. § 1983)). Here, Plaintiff alleged that Defendants MultiPlan, UniCare, and United are the parties involved in the conspiracy; Defendants' purpose is to obtain the benefit of discounted rates while refusing to provide appropriate corresponding incentives; the Court infers that the approximate date of the conspiracy is just prior to the date Plaintiff and MultiPlan entered into the Amended PPO agreement that established the Complementary Network Client Benefit Programs (#1, ¶ 60). Based on this information from the complaint, the Court concludes that Plaintiff adequately alleged a conspiracy.

Defendant also contends that Plaintiff has failed to allege an underlying wrongful act because it failed to plead either a fraudulent act that satisfies Federal Rule of Civil Procedure 9(b) or any unlawful act. The Seventh Circuit court has stated that Rule 9(b) applies to averments of fraudulent misrepresentation in addition to claims of fraud. *See Borsellino v. Goldman Sachs Group, Inc*., 477 F.3d 502, 507 (7th Cir. 2007) (stating that Rule 9(b) applies to claims other than fraud where the plaintiff has made a factual allegation that there has been a misrepresentation).

Here, Plaintiff alleged that Multiplan unlawfully contracted with Plaintiff in that it misrepresented the terms of the contract to Plaintiff. (#1, ¶ 62.) The Court agrees that this allegation does not satisfy Rule 9(b), which requires that the circumstances of fraud include the identity of the party who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff. *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992). In a separate Report and Recommendation, the Court recommends striking the language in the claim related to

the misrepresentation. (#1, ¶ 62, "in that it misrepresented the terms of the contract to Plaintiff and the physician and hospital Classes.") However, the civil conspiracy claim does not depend solely on the allegation of misrepresentation. As a result, the Court will not recommend dismissing the claim in its entirety on the basis that Plaintiff failed to satisfy Rule 9(b).

Defendant also contends that Plaintiff has failed to state any other underlying wrongful act. The Court disagrees. The claim alleges that Defendants conspired to underpay Plaintiff for its services to insureds while refusing to provide appropriate corresponding incentives and to keep this agreement secret, and Defendants subsequently underpaid Plaintiff.

### B. Breach of Contract Claim

Defendant argues that the Court should dismiss the claim because Plaintiff has not alleged the existence of a contract between Plaintiff and UniCare. As noted above, the Court construes the breach of contract claim as a claim against MultiPlan only. Furthermore, in its Report and Recommendation on MultiPlan's motion to dismiss, the Court recommended denying the motion to dismiss the breach of contract claim against MultiPlan.

### C. Consumer Fraud Act Claim

Defendant UniCare next argues that Plaintiff's Consumer Fraud Act claim is deficient because Plaintiff lacks standing, UniCare did not engage in a deceptive act, the claim does not satisfy Rule 9(b), and a breach of contract is not actionable under the Consumer Fraud Act.

Defendant United's motion to dismiss raised the issue of standing. In its Report and Recommendation regarding that motion, the Court recommended granting the motion to dismiss the Consumer Fraud Act claim because Plaintiff was not a consumer as to Defendants under the Consumer Fraud Act and Plaintiff failed to allege a consumer nexus. As a result, the Court need not consider Defendant's other arguments.

### D. Unjust Enrichment Claim

Defendant next argues that Plaintiff has failed to plead a claim for unjust enrichment because Plaintiff failed to plead unjust enrichment with particularity and there is no underlying injury.

Regarding the purported failure to plead with particularity, Defendant's contention depends on the premise that the unjust enrichment claim is based primarily on allegations of fraud. The Court disagrees with this characterization of the claim.

In Illinois, to prevail on a claim for unjust enrichment, a plaintiff must show either that (1) a benefit that should have been given to the plaintiff was mistakenly given to the defendant instead; (2) the defendant obtained a benefit through some type of wrongful conduct; or (3) the plaintiff had a better claim to the benefit than the defendant for some other reason. *Munch v. Sears Roebuck and Co.*, Nos. 06 C 7023, 07 C 412, 2007 WL 2461660, *5 (N.D. Ill. Aug. 27, 2007) (unreported). In this case, Plaintiff's unjust enrichment claim is based on allegations that Defendants acted "wrongfully" by agreeing to underbill and underpay for Plaintiff's services. The claim is not based solely on allegations of fraud subject to the heightened pleading standard of Rule 9(b).

Defendant's second contention, that there is no underlying injury, starts with the same premise–that the unjust enrichment claim is based on fraud–and then adds that the purported fraud claim should be dismissed. The cases Defendant cited are consistent with this. *See, e.g., Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) (affirming dismissal of unjust enrichment claim based on dismissal of the underlying fraud claim); *Munch*, 2007 WL 2461660, at *6 (dismissing the unjust enrichment claim because the underlying fraud claim failed to state a claim); *In re Sears Roebuck & Co. Tools Mktg. & Sales Practice Litig.*, Nos. MDL-1703, 05 C 4742, 05 C 2623, 2005 WL 3077606, *2 (same) (unreported).

However, as the Court noted above, Plaintiff's unjust enrichment claim is not based on fraud. Plaintiff has adequately alleged a claim and the Court recommends denying the motion to dismiss.

### E. Accounting Claim

Defendant next argues that the Court should dismiss the accounting claim because Plaintiff has failed to state a claim. To allege the remedy of an equitable accounting, a plaintiff "must allege the absence of an adequate remedy at law and one of the following: (1) a breach of a fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature." *Waldock v. M.J. Select Global, Ltd.*, No. 03 C 5293, 2005 WL 3542527, *13 (N.D. Ill. Dec. 27, 2005) (unreported) (quoting *Hartigan v. Candy Club*, 501 N.E.2d 188, 190 (Ill. App. Ct. 1986)). Plaintiff has alleged that it does not have an adequate remedy at law, but Defendant contends that it has not satisfied the second requirement.

In its memorandum, Plaintiff responds that it has a fiduciary relationship with MultiPlan, the accounts shared among Defendants are particularly complex, and an accounting is necessary for full prosecution of Plaintiff's claim, particularly in light of the fraudulent conduct alleged in the complaint. The Court disagrees with Plaintiff's statement that a fiduciary relationship exists between MultiPlan and Plaintiff; absent any information or allegations to the contrary, it appears from the complaint that the parties' relationship was based solely on contract. However, it is true that Plaintiff has alleged a claim of civil conspiracy based in part on fraudulent conduct. Furthermore, although a plaintiff cannot amend its complaint through arguments presented in its legal memoranda (*Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993)), the allegations in the complaint make it clear to the Court that accounting for the claims in this case will be complex. "[A] court has broad discretion to determine whether it is appropriate to order an accounting." *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985). Here, Plaintiff has adequately alleged a claim for accounting at this time and the Court recommends denying the motion to dismiss.

13

### F. Injunctive Relief Claim

Defendant next argues that Plaintiff failed to state a claim for injunctive relief.

Plaintiff has failed to respond to this argument. Courts have no duty to research and construct legal arguments. *Head Start Family Educ. Program, Inc. v. Coop. Educ. Serv. Agency 11*, 46 F.3d 629, 635 (7th Cir. 1995). The Seventh Circuit court has made it clear that a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point. *Doe v. Johnson,* 52 F.3d 1448, 1457 (7th Cir. 1995); *Sullivan v. Rilling*, No. 94 C 539, 1999 WL 199602, \*6 (N.D. Ill., Mar. 31,1999) (unreported) (parties who present only "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority" have effectively forfeited those arguments) (quoting *United States v. Schimmel*, 950 F.2d 432, 434 n.1 (7th Cir. 1991)). Accordingly, the Court recommends granting Defendant's motion to dismiss the injunctive relief claim and the requests for attorney fees and punitive damages.

### IV. Summary

For the reasons set forth above, this Court recommends that the Defendant UniCare's Motion To Dismiss Plaintiff's Complaint **(#21)** be **GRANTED** as to the Consumer Fraud Act claim in Count III and the claim for injunctive relief in Count VI, and **DENIED** as to all other counts. Because it is conceivable that Plaintiff can amend its complaint to state claims, the Court recommends that the dismissal be without prejudice and that Plaintiff be granted leave to file an amended complaint within fourteen (14) days of the order ruling on the motion.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days after being served with a copy of this Report and

Recommendation. *See* 28 U.S.C § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 10th day of September, 2008.

s/ DAVID G. BERNTHAL  
U.S. MAGISTRATE JUDGE