# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

_____

| | | |
|---|---|---|
| CHRISTIE CLINIC, P.C., individually | ) | |
| and on behalf of others similarly situated, | ) | |
| | ) | **Case No. 08-CV-2065** |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| MULTIPLAN, INC., a New York corporation, | ) | |
| UNICARE LIFE and HEALTH INSURANCE | ) | |
| COMPANY, a Texas corporation, and | ) | |
| UNITED HEALTH CARE INSURANCE | ) | |
| COMPANY, a subsidary of UNITED | ) | |
| HEALTH GROUP, a Minnesota corporation, | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION

This case is before the court for ruling on Plaintiff's Motion for Class Certification Pursuant to Rule 23(a) and (b)(3) (#70). This court has carefully reviewed Plaintiff's Motion, Memorandum in Support (#71) and supporting exhibits, as well Defendants' Joint Memorandum in Opposition to Plaintiff's Motion to Certify the Class (#100) and supporting exhibits. Following this court's careful and thorough review, Plaintiff's Motion for Class Certification (#70) is DENIED. In addition, Defendants' Motion for Leave to File Reply Brief (#116) and Defendants' Joint Partial Motion to Dismiss (#104) are GRANTED.

### FACTS

On March 11, 2008, Plaintiff, Christie Clinic, P.C., individually and on behalf of others similarly situated, filed its Complaint (#1) against Defendants, MultiPlan, Inc. (MultiPlan), Unicare Life and Health Insurance Company (Unicare), and United Health Care Insurance Company, a subsidiary of United Health Group (United). Plaintiff alleged that it is a health care provider, that is, a corporation engaged in providing health care services performed by licensed physicians and nurse practitioners. Plaintiff alleged that MultiPlan is a Preferred Provider Organization

Administrator, that is, a company that works as an intermediary between health care providers and health insurance companies to create a Preferred Provider Organization (PPO) network. Defendants United and Unicare are health insurance companies, that is, companies that reimburse health care providers for services rendered to the companies' insureds. In its Complaint, Plaintiff referred to the health insurance companies as "payors."

The parties in this suit are related to each other through a PPO arrangement. A PPO is designed to manage the provision of health care services through arrangements between health care providers (such as Plaintiff), payors (such as United and Unicare) and a PPO Administrator (such as MultiPlan), who establishes this PPO arrangement. Plaintiff alleged that, in PPO arrangements, health care providers agree to offer a discount rate to patients who are insured by payors in the network. Plaintiff alleged that, in return, payors with access to the discount rate must provide incentives to patients that "steer" them to the health care providers. Plaintiff alleged that, in this way, health care providers are compensated for the discount rate by an increase in the volume of patients.

Plaintiff stated that its Complaint was brought on behalf of healthcare physicians, hospitals and patients who entered into agreements to participate in the MultiPlan PPO. Plaintiff alleged that MultiPlan entered into an agreement with Plaintiff and the other members of the class. Plaintiff alleged that, in the agreement, MultiPlan guaranteed that it would market its provider network, which offers financial incentives such as reduced deductibles and co-insurance to patients who use "in network" providers, only to Plaintiff and the physicians and hospitals in the class. Plaintiff alleged that the purpose of the agreement was to increase the volume of business that Plaintiff and the other members of the class would receive. Plaintiff alleged that, in return, Plaintiff and the other members of the class agreed to provide medical services to MultiPlan patients at discounted rates. Plaintiff alleged that, in blatant disregard of its promise to market its network patients only to payors

who provided financial incentives, MultiPlan secretly contracted with payors Unicare and United allowing access to the providers but allowing disincentives to patients to see providers. Plaintiff alleged that Defendants, however, retained the contractual discounts as if they had provided incentives for patients to see in network physician providers. Plaintiff alleged that, as a result, Plaintiff and the other members of the class received reduced payments for medical services without receiving the increased volume of patients that was to be the "benefit of the bargain." Plaintiff alleged that Defendants thereby increased their profits at the expense of Plaintiff and the Class.

Plaintiff alleged that this conduct by Defendants was part of a "Silent PPO" scheme. Plaintiff stated that a Silent PPO "is the illegitimate appropriation of discounted reimbursement amounts by payors who do not offer a preferred provider or exclusive provider policy to patients and/or who do not offer any financial incentive mechanism (e.g. reduced co-payments, reduce [sic] deductibles, or reduced premiums) to steer or channel patients to preferred providers for receipt of medical services." Plaintiff alleged that it was harmed by this scheme because payors accessed the discount rate but patients paid co-payments higher than co-payments for in-network services. Therefore, Plaintiff received reduced payments for medical services without receiving the increased volume of patients that was to be the benefit of their bargain.

In Count I, Plaintiff alleged that Defendants engaged in a civil conspiracy. In Count II, Plaintiff alleged breach of contract. In its breach of contract count, Plaintiff acknowledged that its December 15, 2004 agreement with MultiPlan contained the following provision: "However, Complimentary [sic] Network Clients['] Benefit Programs may make payment for Covered Services at an out of network level." Plaintiff alleged that MultiPlan explained that there were "soft" incentives in place in their Network and "explicitly promised that they would resolve the issue of 'soft' incentives." Plaintiff alleged that MultiPlan failed to take any action to resolve the issue of "soft" incentives in violation of its contract with Plaintiff and the other providers in the class. In

Count III, Plaintiff alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act. In Count IV, Plaintiff alleged unjust enrichment. In its Complaint, Plaintiff also sought an accounting and injunctive relief.

Defendants filed Motions to Dismiss (#21, #24, #30) challenging the sufficiency of Plaintiff's Complaint. On September 10, 2008, Magistrate Judge David G. Bernthal entered three Reports and Recommendations (#64, #65, #66). Judge Bernthal agreed with Defendants that Plaintiff's allegations of misrepresentations by MultiPlan were "averments of fraud" so that the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure applied to the allegations. Judge Bernthal therefore recommended striking the language that referred to misrepresentations from Paragraph 62 and Paragraph 68 of the Complaint. Judge Bernthal stated that, if Plaintiff wished to include averments of fraud in its claims, it must amend the Complaint to allege the misrepresentations with particularity as required by Rule 9(b). Judge Bernthal concluded, however, the Plaintiff's claims of civil conspiracy and breach of contract did not depend solely on allegations of misrepresentation, so he did not recommend dismissing those claims in their entirety. Judge Bernthal also concluded that Plaintiff's claim for unjust enrichment and claim for an accounting should not be dismissed. Judge Bernthal did recommend dismissing Plaintiff's claim brought under the Illinois Consumer Fraud and Deceptive Business Practices Act because Plaintiff failed to allege that the Consumer Fraud claim implicated consumer protection concerns. Judge Bernthal also noted that Plaintiff did not respond to Defendants' arguments that Plaintiff was not entitled to injunctive relief, attorney fees or punitive damages. Judge Bernthal therefore recommended dismissing Plaintiff's injunctive relief claim and Plaintiff's requests for attorney fees and punitive damages as to all Defendants.

On September 24, 2008, Defendants filed Partial Objections (#75, #76) to the Reports and Recommendations. Plaintiff filed Motions to Strike Defendants' Partial Objections (#83, #84) and

a Response to Defendants' Partial Objections (#91). Plaintiff did not, however, file any of its own Objections to the Reports and Recommendations. On October 15, 2008, this court entered an Order (#93). Following careful de novo review of Judge Bernthal's reasoning, Defendants' Partial Objections and Plaintiff's Response, this court accepted Judge Bernthal's Reports and Recommendations in their entirety.[1] This court therefore struck the language in Paragraph 62 and Paragraph 68 of the Complaint regarding misrepresentations. This court also dismissed Plaintiff's claim pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act as well as Plaintiff's claim for injunctive relief and requests for attorney fees and punitive damages. Pursuant to Judge Bernthal's recommendation, the dismissals were without prejudice and Plaintiff was allowed 14 days to file an amended complaint to correct the deficiencies noted by Judge Bernthal.

In the meantime, on September 18, 2008, Plaintiff filed a First Amended Complaint (#68), a Motion for Class Certification (#70) and a Memorandum of Law in Support (#71). Plaintiff asked this court to certify the following proposed class:

> All licensed medical providers (*physicians and hospitals*) who were and/or are (a) parties to a Multiplan Participating Primary PPO Provider Agreement; and (b) unknowingly and without their consent had Multiplan preferred provider discounts taken against payments for medical services rendered to out-of-network patients, with losses of market share resulting from a failure to provide the corresponding incentives (i.e., steerage).[2]

On September 23, 2008, Plaintiff filed a Second Amended Complaint (#73). After this court's Order

---

[1] This court also denied Plaintiff's Motions to Strike.

[2] Although the First Amended Complaint (#68) stated, like the original Complaint, that Plaintiff was bringing a class action on behalf of "physicians, hospitals and patients," the class proposed by Plaintiff in its Motion for Class Certification (#70) does not include patients.

(#93) accepting Judge Bernthal's Reports and Recommendations, Plaintiff filed a Third Amended Complaint (#97) on October 29, 2008. The Third Amended Complaint (#97) is identical in most respects to Plaintiff's prior complaints. However, the Third Amended Complaint did eliminate the reference to a patient class and deleted the claim brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act.

On November 10, 2008, Defendants filed a Joint Memorandum in Opposition to Plaintiff's Motion to Certify Class (#100) with numerous and lengthy exhibits. On November 13, 2008, Defendants filed a Joint Partial Motion to Dismiss (#104) and Memorandum in Support (#105). Defendants argued that, although Plaintiff deleted its Illinois Consumer Fraud and Deceptive Business Practices Act claim, Plaintiff failed to remove from its Third Amended Complaint (#97) other claims and allegations this court had already dismissed, including claims for punitive damages, injunctive relief, and attorney fees, as well as two specific items in paragraphs 62 and 68 of the Third Amended Complaint alleging fraud and misrepresentation. Defendants stated that Plaintiff had done absolutely nothing to alter its pleadings regarding these claims to correct the deficiencies found by the court. Defendants argued that these claims should be dismissed with prejudice. Plaintiff filed a Response to Defendants' Joint Partial Motion to Dismiss (#108) on November 24, 2008. Plaintiff argued that it amended the claims which had been dismissed without prejudice. On December 5, 2008, Defendants filed a Motion for Leave to File a Reply Brief in Further Support of Defendants' Joint Partial Motion to Dismiss (#116). Defendants argued that a Reply Brief is justified under the circumstances here because Plaintiff had chosen to defend claims it had previously abandoned. Defendants attached their proposed Reply Brief.

ANALYSIS

I. MOTION FOR LEAVE TO FILE

Defendants have asked this court for leave to file a Reply Brief in further support of their

Joint Partial Motion to Dismiss. Plaintiff has not responded to Defendants' Motion for Leave to File (#116). Therefore, pursuant to Rule 7.1(B)(2) of the Local Rules of the Central District of Illinois, this court "presume[s] there is no opposition to the motion." This court also agrees with Defendants that a Reply Brief is justified under the circumstances here and will be helpful to the court. Accordingly, Defendants' Motion for Leave to File (#116) is GRANTED. The clerk is hereby directed to file Defendants' Reply Brief, which is attached to Defendants' Motion as Exhibit A. This court will consider Defendants' Reply Brief in ruling on Defendants' Joint Partial Motion to Dismiss.

## II. JOINT PARTIAL MOTION TO DISMISS

Defendants argued that this court should dismiss, with prejudice, portions of Plaintiff's Third Amended Complaint. Specifically, Defendants contended that certain language in paragraphs 62 and 68 of the Third Amended Complaint, as well as Plaintiff's claims for injunctive relief, attorney fees and punitive damages must be dismissed with prejudice.

In its Response, Plaintiff acknowledged that this court ordered stricken the language regarding alleged misrepresentations in paragraph 62 and paragraph 68 of Plaintiff's Complaint and further acknowledged that this court dismissed Plaintiff's claim for injunctive relief and its requests for attorney fees and punitive damages. Plaintiff pointed out, however, that the dismissals were without prejudice and Plaintiff was allowed to amend its Complaint within 14 days. Plaintiff stated that it did just that and filed its Third Amended Complaint within 14 days of this court's Order. Plaintiff also argued that, contrary to Defendants' argument, it did not re-plead its dismissed claims verbatim and stated that a "careful reading of the Third Amended Complaint clearly shows that the Third Amended Complaint is different." However, Plaintiff did not point out any specific differences in its allegations in the Third Amended Complaint or provide any explanation regarding how the changed allegations corrected the deficiencies in the claims which led to the Order

dismissing them.

In their Reply Brief, Defendants argued that Plaintiff made no substantive changes to its dismissed claims in its Third Amended Complaint. Defendants set out a comparison of the allegations in the original Complaint and the Third Amended Complaint. This court agrees with Defendants that Plaintiff's minor changes to its allegations included in the Third Amended Complaint do not, in any way, address or correct the deficiencies which led to this court's Order striking certain allegations and dismissing certain claims. This court further agrees with Defendants that Plaintiff included, in paragraph 62 and paragraph 68 of its Third Amended Complaint, the same allegations of misrepresentation which this court struck from paragraph 62 and paragraph 68 of its original Complaint. In its Response, Plaintiff made no attempt to explain its blatant disregard of this court's Order. Therefore, the allegations which this court ordered stricken from paragraph 62 and paragraph 68 of Plaintiff's original Complaint are hereby stricken, with prejudice, from paragraph 62 and paragraph 68 of Plaintiff's Third Amended Complaint.

As far as the dismissed claims, this court agrees with Defendants that Plaintiff did not respond to Defendants' well supported arguments included in their Motions to Dismiss and did not file any objections with this court to Judge Bernthal's recommendations that the claims be dismissed. In addition, as previously noted, Plaintiff did not correct any of the deficiencies in the claims in its Third Amended Complaint. This court concludes that Plaintiff's arguments that its claim for injunctive relief and its requests for attorney fees and punitive damages should not be dismissed are too late and unpersuasive. Accordingly, Plaintiff's claim for injunctive relief and its requests for attorney fees and punitive damages included in its Third Amended Complaint are hereby dismissed with prejudice.

For all of the reasons stated, Defendants' Joint Partial Motion to Dismiss (#104) is GRANTED.

### III.  MOTION FOR CLASS CERTIFICATION

### A.  PARTIES' ARGUMENTS AND DOCUMENTATION

In its Motion, Plaintiff argued that this court should certify the class it has proposed. Plaintiff argued that it has satisfied the four prerequisites for class certification set forth in Rule 23(a) of the Federal Rules of Civil Procedure: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequate representation).  Plaintiff attached documentation in support of its argument that the requirements for class certification have been met.  The documentation consisted of: (1) the agreement entered between HealthNetwork, Inc. (now MultiPlan) and Plaintiff in 1989; (2) the amendment to the initial agreement, effective December 15, 2004, which set out a new network scheme including a Primary Network and a Complementary Network; (3) copies of agreements involving United, Unicare and MultiPlan; (4) Plaintiff's First Amended Complaint; (5) a 2004 Annual Report for United; (6) news releases regarding the network; and (7) information regarding Plaintiff's attorneys.

Plaintiff stated that the proposed class includes an estimated 500,000 healthcare providers throughout the United States who, through the MultiPlan PPO Provider Agreement, were defrauded in a silent PPO scheme by MultiPlan, United and Unicare.  In support of this assertion, Plaintiff referred to its First Amended Complaint and information on Defendants' websites.

Plaintiff also argued that the requirement of commonality is met because there are common questions of law and fact.  Plaintiff argued that Defendants have engaged in standardized conduct (repeated breach of contract, as alleged, along with conspiracy and fraudulent misrepresentation) toward the members of the proposed class that is easily characterized in specific predominant

questions of law and fact, common to all class members. Plaintiff stated that the questions common to all class members, and common to Defendants' defenses include: (1) whether, and in what manner, Defendants intentionally entered into a conspiracy to defraud Plaintiff and the class; (2) whether, and in what manner, MultiPlan breached its contract with Plaintiff and the class; (3) whether, and in what manner, MultiPlan intentionally entered into a conspiracy with Unicare and United to allow them to use MultiPlan's agreement with Plaintiff and the class knowing they would not provide incentives as required by law and industry custom and practice; (4) the extent to which MultiPlan intentionally defrauded Plaintiff and the other members of the class by adding language to its agreements allowing "Complementary Network Clients" to bill Plaintiff and the other members of the class "at an out of network level" through MultiPlan; (5) whether, and in what manner, Defendants should account to Plaintiff and the class for all discounts taken against Plaintiff and the class pursuant to the Participating Primary PPO Provider Agreement; (6) whether Defendants should disgorge any monies obtained in violation of its contract with Plaintiff and the class; (7) whether Plaintiff and the class have sustained damages and, if so, the measure of their damages; and (8) the extent of damages, including lost market share, suffered by Plaintiff and the class. In support of this argument, Plaintiff referred generally to the documentation in support of its Motion, including the First Amended Complaint.

Plaintiff next argued that the requirement of typicality is met because Plaintiff, as class representative, is able to prove the bulk of the elements of each class members' claims when it proves its own claims. Plaintiff argued that, "at the heart of the class representative's claims, and the class' claims, is the contract utilized by MultiPlan and its providers, and the scheme which it facilitates, neither of which are unique to Plaintiff." Plaintiff referred to various documents, with no explanation as to how the documents support this argument. Plaintiff further argued that "because the conduct alleged is a scheme, conspired by the Defendants, and repetitiously

implemented by Defendants, [Plaintiff], while proving its own claims, necessarily also proves the elements of each proposed class member's claims." In support of this argument, Plaintiff referred only to its First Amended Complaint.

Plaintiff also argued that the requirement of adequacy of representation is met. Plaintiff argued that it can and will fairly and adequately represent and protect the interests of the class and also argued that its counsel has the experience and competence necessary for fully litigating the issues in this case.

In addition, Plaintiff recognized that, under Rule 23(b)(3), two additional requirements must be met in order for a class to be certified: (1) common questions must "predominate over any questions affecting only individual members" (the predominance requirement); and (2) a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority requirement). Plaintiff argued that common issues predominate over any perceived individual inquiry and that a class action is the superior method of litigating the subject issues.

In Response, Defendants filed a Joint Memorandum in Opposition, with lengthy and detailed exhibits. Defendants stated that Plaintiff's 1989 contract with HealthNetwork, now known as MultiPlan, does not impose specific obligations on MultiPlan or its client payors to provide financial or other incentives to patients to use PPO providers. The contract requires only that MultiPlan "market, advertise and actively promote . . . the utilization by Payors and [patients] of [the PPO]." Defendants stated that the current arrangement between Plaintiff and MultiPlan is memorialized in the December 15, 2004, amendment. The amendment is more specific and recognizes two distinct discount programs available to payors that contract with MultiPlan, the "Primary Network Client Access" program and the "Complementary Network Client Access" program. Defendants noted that the amendment specifically provides that "Complementary Network Clients' Benefit Programs may make payment for Covered Services at an out of network level."

Defendants argued that each of Plaintiff's claims rests on the core contention that the payor Defendants took "Complementary Network" discounts while paying benefits to members at "out-of-network" co-insurance and benefit levels, rather than at higher "in-network" levels. Plaintiff has alleged that these "out-of-network" benefit payments failed to provide the kinds of "incentives" for patients to obtain services at Plaintiff's offices that Plaintiff purportedly bargained for. Defendants stated that Plaintiff "rails that the resulting arrangement was a 'Silent PPO' in which it was required to discount its services without getting 'steerage' of patients toward its facilities." Defendants further stated that Plaintiff has acknowledged that its contract with MultiPlan explicitly provides that Complementary Network Clients Benefits Programs "may make payment for Covered Services at an out of network level." Defendants argued that this is why Plaintiff is forced to allege that Defendants fraudulently misrepresented characteristics of the applicable contracts. Defendants argued that, because Plaintiff's claims are based upon alleged fraudulent misrepresentations, the claims simply cannot be managed on a class basis.

Defendants have provided extensive documentary evidence to support their contention that no class should be certified in this case. Defendants included the affidavit of Marcy E. Feller, executive vice president and general counsel for MultiPlan. In her affidavit, Feller stated that she has control and authority over MultiPlan's provider template contracting forms utilized by MultiPlan nationwide and in Illinois to contract with hospitals, physicians and physician group practices, such as Plaintiff. Feller stated that there were 43 different provider templates currently utilized by MultiPlan nationwide, including in Illinois, to contract with hospitals, physicians, and physician group practices. Feller also stated that there were 34 different provider contract templates for companies acquired by MultiPlan, and for which MultiPlan is still administering PPO business on a nationwide basis. Copies of the 77 different contracts were attached to Feller's affidavit. Feller then set out, in detail, the different contractual provisions included in these contracts. For example,

Feller stated that some of the contracts provide for the governing law to be in the state where the hospital, physician, physician group practice or ancillary provider is located, while some of the contracts provide for a specific locale as the governing law, such as New York, where MultiPlan's principal office is located. Feller stated that the laws of every state in the United States are implicated since MultiPlan does business nationwide.

Feller also discussed the agreements involving Plaintiff and stated that Plaintiff's agreements are different from all of the templates utilized by MultiPlan. Feller's affidavit included several pages wherein she listed provisions in Plaintiff's contract which were either not found in any other contracts or only in a few other contracts. For example, Feller stated that Plaintiff's agreement does not contain a dispute resolution provision, whereas many of the attached templates contained such provisions, with some of the contracts including binding arbitration provisions. Feller further stated that the provision in Plaintiff's agreement regarding "Marketing and Promotion" is unique because a similar type provision is not found in any of the other 77 contract templates attached to her affidavit. Most importantly, Feller stated that Plaintiff's agreement addresses primary network clients and complementary network client access and that such provisions "are not found in any of the other MultiPlan contract templates attached hereto as Exhibits '1' through '77.'" Keller also stated that the MultiPlan contract templates utilized by MultiPlan in the State of Illinois differ vastly from Plaintiff's agreement and include different terms.

Defendants also attached the declaration of John Haben, the vice president of shared savings at United. Haben's lengthy affidavit set out how the MultiPlan PPO network works regarding the provision of services. Haben stated that United made payments to Plaintiff consistent with the applicable agreements and provided an explanation of benefits with its payments to Plaintiff which specifically stated that Plaintiff was not a network provider but had accepted a discount in

accordance with the MultiPlan agreement. Haben stated that, to the best of his knowledge, Plaintiff never complained to United that it had no contractual right to take "Complementary Network" discounts on payment for services rendered by Plaintiff to United members. Haben attached various documents to support the statements in his declaration, including a sample explanation of benefits form, dated August 1, 2006.

Defendants also attached the declaration of Edward Carloni. Carloni stated that he is employed by Wellpoint, Inc. as the Director, Affiliate Network Services for Unicare, a subsidiary of Wellpoint. Carloni stated that, despite Unicare's ability to access the MultiPlan Complementary Network, Unicare "did not access or apply the MultiPlan complementary network discount" to Plaintiff's claims. Carloni stated that, in fact, Plaintiff's claims submitted to Unicare "were typically paid on a primary basis via a separate network as a result of [Plaintiff's] relationship with HealthLink HMO, Inc."

## B. LEGAL STANDARD

The Seventh Circuit has recently confirmed that district courts should exercise "caution in class certification generally." Thorogood v. Sears, Roebuck & Co., 547 F.3d 742, 746 (7th Cir. 2008). A plaintiff seeking class certification has the burden of proving that the proposed class meets the requirements of Rule 23. Herkert v. MRC Receiveables Corp., ___F.R.D.___, 2008 WL 5082725, at *2 (N.D. Ill. 2008), citing Williams v. Chartwell Fin. Servs., Ltd., 204 F.3d 748, 760 (7th Cir. 2000). Failure to meet any of the requirements of Rule 23(a) precludes class certification. Herkert, 2008 WL 5082725, at *2, citing Oshana v. Coca-Cola Co., 472 F.3d 506, 513 (7th Cir. 2006). Further, as Plaintiff has recognized, the potential class must also satisfy at least one provision of Rule 23(b). Arreola v. Godinez, 546 F.3d 788,797 (7th Cir. 2008). Plaintiffs seeking monetary damages, as Plaintiff is here, must satisfy the requirements of Rule 23(b)(3). Herkert, 2008 WL 5082725, at *2. Rule 23(b)(3) requires the court to find that "questions of law or fact

common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3). The court has broad discretion to determine whether the proposed class meets the requirements of Rule 23. Cima v. Wellpoint Health Network, Inc., 250 F.R.D. 374, 377 (S.D. Ill. 2008).

Furthermore, for purposes of deciding the certification question, the court does not presume that all well-pleaded allegations are true. Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 675-77 (7th Cir. 2001). Instead, the court "look[s] beneath the surface of a complaint to conduct the inquiries identified in [Rule 23] and exercise the discretion it confers." Szabo, 249 F.3d at 677; Matthews v. United Retail, Inc., 248 F.R.D. 210, 214 (N.D. Ill. 2008). "[S]imilarity of claims and situations must be demonstrated rather than assumed." Szabo, 249 F.3d at 677; see also Payton v. County of Carroll, 473 F.3d 845, 854 (7th Cir. 2007). In evaluating class certification, the court must take into consideration the substantive elements of the plaintiff's cause of action and inquire into the proof necessary for the various elements and envision the form that trial on the issues would take. See Cima, 250 F.R.D. at 377. This court, however, will not address any issue pertaining to the merits that does not affect class certification. Szabo, 249 F.3d at 677; Matthews, 248 F.R.D. at 214.

### C. ANALYSIS OF CLASS CERTIFICATION REQUIREMENTS

Defendants contend that Plaintiff has failed to satisfy the requirements of typicality and adequacy of Rule 23(a), as well as both the predominance and superiority requirements of Rule 23(b)(3). This court agrees.

### 1. TYPICALITY

As far as typicality, Plaintiff, as the class representative, must show that its claims are typical of the claims of the putative class members. See Fed. R. Civ. P. 23(a). "A plaintiff's claim is typical

if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." Quiroz v. Revenue Prod. Mgmt., Inc., 252 F.R.D. 438, 442 (N.D. Ill. 2008), quoting Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 597 (7th Cir. 1993). While factual distinctions between the claims of the named and represented plaintiffs do not defeat typicality, the claims of the named plaintiffs must have "the same essential characteristics" as the claims of the proposed class. Srail v. Vill. of Lisle, 249 F.R.D. 544, 550 (N.D. Ill. 2008); see also Oshana, 472 F.3d at 514.

Defendants argue that Plaintiff's fraud-based claim against Defendants is not typical of the other members of the proposed class because Plaintiff's contract with MultiPlan expressly permits "Complementary Network" clients of MultiPlan (like United and Unicare) to provide reimbursement for Plaintiff's services to its members at out-of-network benefit levels. This unique feature of Plaintiff's contract requires Plaintiff to base its claim on allegedly fraudulent misrepresentations made by Defendants to Plaintiff. Defendants contend that the unique factual circumstances surrounding Plaintiff's breach of contract and ancillary claims make it clear that Plaintiff cannot satisfy the typicality requirement for class certification because its claims cannot arise from the same event, practice or course of conduct giving rise to the claims of other class members.

Defendants also argue that Plaintiff will face unique burdens in establishing the reasonableness of its reliance on the alleged representations. Defendants point out that the evidence shows that, for years, Plaintiff submitted claims directly to United, and received payments reflecting "Complementary Network" discounts from United yet did not complain about United's participation until it filed its Complaint. Defendants argue that this "course-of-dealing evidence will severely hamper plaintiff in establishing that it believed it was entitled to payments at in-network benefit levels all along, whereas there is no indication that other PPO providers would face similar obstacles in pressing plaintiff's theory." Defendants further point out that, with respect to Unicare, Plaintiff

cannot provide representation of others because Unicare never accessed the MultiPlan "Complementary Network" discount at all.

In its argument that it meets the typicality requirement, Plaintiff essentially relied on the allegations of its First Amended Complaint. Plaintiff argued that the heart of its claims "is the contract utilized by MultiPlan and its providers, and the scheme which it facilitates, neither of which are unique to Plaintiff." Plaintiff, however, did not provide any evidence to support its argument that the contract utilized by MultiPlan and its providers was not "unique to Plaintiff." Defendants have provided evidence that Plaintiff's contract is, in fact, unique and not typical of the contracts between MultiPlan and other providers. Plaintiff's reliance on the allegations of its First Amended Complaint is not sufficient in light of the strong evidence presented by Defendants that Plaintiff's contract with MultiPlan is unique in many respects. This court concludes that Plaintiff's position regarding Defendants is not typical of most, if not all, other health care providers who have a contractual arrangement with MultiPlan. Defendants have also provided evidence that Plaintiff's course of dealing with United and Unicare creates challenges, unique to Plaintiff, in proving Plaintiff's claims. This court therefore concludes that Plaintiff has not met its burden to show that the typicality requirement of Rule 23(a)(3) has been met.

## 2. ADEQUATE REPRESENTATION

Defendants also argue that, for essentially the same reasons, Plaintiff has not met its burden to show that it "will fairly and adequately protect the interests of the class." See Fed R. Civ. P. 23(a)(4). Defendants argue that the unique burdens, and defenses, that Plaintiff faces on its individual claims establishes that Plaintiff cannot hope to provide adequate representation of other PPO providers. Defendants point out that "if the class is heterogeneous, the representative is unlikely to be able to offer representation to all members." See Culver v. City of Milwaukee, 277 F.3d 908, 911 (7th Cir. 2002).

17

Again, in arguing that it is an adequate representative of the class, Plaintiff has relied on its allegations regarding the similarity of its claims with those of the proposed class members and has not provided any evidentiary support for its argument. In the face of the evidence provided by Defendants regarding the uniqueness of Plaintiff's position, this is not sufficient. For purposes of Rule 23(a)'s adequacy requirement, a plaintiff is adequate and thus qualified to represent a class if its interest in proving its claim will lead it to prove the claims of the remainder of the class. See Cima, 250 F.R.D. at 379. In this case, this court concludes that Plaintiff has not shown that proving its case will lead it to prove the potentially very different claims of the remainder of the class. This court therefore concludes that Plaintiff has not met its burden to show that it will adequately represent the class, as required by Rule 23(a)(4).

### 3. PREDOMINANCE

Defendants' lengthiest and most detailed argument is that Plaintiff cannot meet the requirement of Rule 23(b)(3) to show that questions of law or fact common to class members predominate over any questions affecting only individual members. Defendants argued that, in fact, there are no claims, issues or defenses subject to class-wide treatment in this case. Defendants contended that Plaintiff's core theories can be proved, if at all, with proof specific to each health care provider. Defendants argued that this is true because Plaintiff's theory that contract terms were misrepresented cannot be advanced with class-wide proof. Defendants pointed out that Plaintiff does not point to any common proof of a false statement or failure to disclose, such as a uniform writing supposedly provided to all putative class members. Defendants contended that, therefore, in any class trial, the critical proof of fraud would have to be supplied by providers individually. In this case, Plaintiff has argued that the questions common to all class members include questions regarding whether Defendants entered a conspiracy to defraud and whether MultiPlan intentionally defrauded Plaintiff and other members of the class. This court agrees with Defendants that

Plaintiff's claims of fraud would require proof from each class member. "Common law actions for fraud require each individual plaintiff to prove that a specific misrepresentation was made, upon which the plaintiff relied." Riddle v. Nat'l Sec. Agency, Inc., 2007 WL 2746597, at *10 n.4 (N.D. Ill. 2007). Accordingly, the Seventh Circuit has recognized that fraud is "plaintiff-specific" so that "issues common to all the class members [are] not likely to predominate over issues peculiar to specific members." Nagel v. ADM Investor Servs., Inc., 217 F.3d 436, 443 (7th Cir. 2000); see also Riddle, 2007 WL 2746597, at *10 n.4 ("a common law fraud claim typically raises issues that are personal to each individual plaintiff and, therefore, not common to the class."); Fletcher v. ZLB Behring LLC, 245 F.R.D. 328, 332 (N.D. Ill. 2006) (district court refused to certify a proposed class because "fraud claims turn on what [the employer] communicated to each putative class member.")

Defendants also argued that Plaintiff's claim of breach of contract, even if the suggestions of fraud are not considered, cannot be advanced with common proof. Plaintiff has argued that a question common to all class members is whether MultiPlan breached its contract with Plaintiff and the class. Defendants noted that the evidence shows that there are numerous material variations in the terms of the contractual agreements between MultiPlan and the providers in the proposed class. Defendants argued that these variations in contract terms prevent class treatment of Plaintiff's breach of contract claim. Defendants argued that the material variations in the contracts include: (1) provisions governing the use of in and out-of-network benefit levels; (2) provisions addressing required incentives or steerage; and (3) provisions regarding provider-specific defenses to liability such as dispute resolution provisions (including provisions requiring binding arbitration) and forum-selections clauses which could preclude proposed class members from participation in this litigation. This court concludes that Defendants have conclusively shown that the contracts between MultiPlan and the proposed class members are materially different from the contract between MultiPlan and Plaintiff. Therefore, as far as Plaintiff's breach of contract claim, the issues common to the class

members do not predominate over questions affecting individual members.

In addition, Defendants argued that Plaintiff's claims of unjust enrichment and civil conspiracy are derivative of Plaintiff's fraud and breach of contract theories and, therefore, also fail the predominance requirement. This court agrees. See Clay v. Am. Tobacco Co., 188 F.R.D. 483, 500 (S.D. Ill. 1999) (district court stated that unjust enrichment is an equitable doctrine that depends upon the analysis of each individual situation).

Defendants have also argued persuasively that, because Plaintiff has proposed a nationwide class, variations in the state laws that would govern the trial of Plaintiff's legal theories independently preclude class treatment. See Vulcan Golf, LLC v. Google Inc., ___ F.R.D. ___, 2008 WL 5273705, at *13 (N.D. Ill. 2008) (district court stated that it found "no basis on which to differ from the well-supported and detailed analyses of other district courts" and concluded that differences in state law on unjust enrichment precluded certification of nationwide class); Siegel v. Shell Oil Co., 2008 WL 4378399, at *4 n.2 (N.D. Ill. 2008) (noting variations in state law regarding unjust enrichment and civil conspiracy); Clay, 188 F.R.D. at 497-501 (district court found proposed nationwide class action precluded, in part, because of variations in state law as to civil conspiracy and unjust enrichment). In a multi-state class action, "a district court must consider how variations in state law affect predominance and superiority." Castano v. Am. Tobacco Co., 84 F.3d 734, 741 (5th Cir. 1996); see also Siegel, 2008 WL 4378399, at *3. The Seventh Circuit has stated that a class action is not proper unless all litigants are governed by the same legal rules. In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1015 (7th Cir. 2002).

This court notes that Plaintiff stated that members of the proposed class are located in every state but did not even address the important issue of the variations in state law regarding its claims. This court concludes that this is another important reason why the class proposed by Plaintiff should not be certified.

For all of the reasons discussed above, this court agrees with Defendants that Plaintiff has not met the requirement of Rule 23(b)(3) to show that questions of law or fact common to class members predominate over questions affecting only individual members. Plaintiff's failure to meet this requirement precludes class certification.

## 5. SUPERIORITY

Defendants have also argued that, in this case, a class action is not superior to other means of addressing class members' alleged claims, as required by Rule 23(b)(3). Defendants noted that Plaintiff has alleged that Defendants' misconduct denied providers of "millions of dollars of reimbursement to which they are rightly entitled." Defendants therefore argued that Plaintiff's claims, if credited, would likely involve significant damages, thus making it financially feasible for Plaintiff and other providers to bring individual actions to recover the damages alleged, making a class action unnecessary.

In Amchem Prods., Inc. v. Windsor, 521 U.S. 592 (1997), the United States Supreme Court agreed with the Seventh Circuit that:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." A class action resolves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

Amchem Prods., 250 F.R.D. at 617, quoting Mace v. Van Ru Credit Corp., 109 F.3f 338, 344 (7th Cir. 1997). Conversely, in a case like this one involving substantial individual claims, it is unnecessary to certify a class because class members have an important interest in bringing individual actions. See Cima, 250 F.R.D. at 384, citing Szabo, 249 F.3d at 678. Plaintiff has argued

that, for some providers, "the amount in controversy might not justify the expense of pursuing individual litigation." This speculative argument that some providers "might" not have substantial individual claims does not convince this court that a class action is necessary under the circumstances here. Therefore, this court concludes that Plaintiff has not shown that a class action is superior to other means of addressing the class members' claims in this case.

### D. CONCLUSION

For all of the reasons stated, this court concludes that Plaintiff has not met its burden to show that a class should be certified in this case. Accordingly, Plaintiff's Motion for Class Certification (#70) is DENIED.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's Motion for Class Certification (#70) is DENIED.

(2) Defendants' Motion for Leave to File Reply Brief in Support of Defendants' Joint Partial Motion to Dismiss (#116) is GRANTED. The clerk is hereby directed to file Defendants' Reply Brief, which is attached to Defendants' Motion as Exhibit A.

(3) Defendants' Joint Partial Motion to Dismiss (#104) is GRANTED. This court hereby strikes, with prejudice, the language in paragraph 62 of Plaintiff's Third Amended Complaint which states "in that it misrepresented the terms of the contract to Plaintiff and the Class" and the language in paragraph 68 of Plaintiff's Third Amended Complaint which states "misrepresented the contract and." In addition, Count VI of Plaintiff's Third Amended Complaint, in which Plaintiff is seeking injunctive relief, is dismissed with prejudice. Also, all of Plaintiff's requests in the Third Amended Complaint for injunctive relief, attorney fees and punitive damages are dismissed with prejudice.

(4) This case remains scheduled for a final pretrial conference on September 3, 2010, at 1:30 p.m. and a jury trial on September 20, 2010, at 9:00 a.m. on Plaintiff's remaining claims.

ENTERED this 26th day of January, 2009

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE